COTTON LUMBER & MERCANTILE COMPANY v. ST. LOUIS RIVER DAM & IMPROVEMENT COMPANY.[1]

October 27, 1911.

Nos. 17,226— (64).

**Negligent operation of dam — liability for flood — abandoned logs — log marks.**

Plaintiff owned a sawmill, pier, and boom on the Whiteface river. Defendant maintained and operated a sluicing dam across the river eight miles above the mill. In this action, brought to recover damages to the mill, pier, and boom, and for the loss of logs, caused by a flood of water alleged to have been negligently released from the dam, it is *held:*

1. That the evidence sustains the verdict, to the effect that defendant was negligent, and that plaintiff was not guilty of contributory negligence.

2. R. L. 1905, § 2580, providing that logs found in the waters of any lumber district, not in the possession or under the control of any person, which have no marks that have been recorded, shall be deemed abandoned, and shall not be recognized as property by the courts, has no application to logs not in the water, or which are in the possession or under the control of the owner, and hence has no application in this case.

3. Plaintiff's omission to have its log marks recorded was not a cause of the loss, and hence not contributory negligence.

4. There was no prejudicial error in the charge, or in the refusal to give instructions requested.

[1]Reported in 132 N. W. 1126.

Action in the district court for St. Louis county to recover $5,626 damages to a certain mill, pier and boom and for the loss of logs, caused by the negligence of defendant. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for $1,133. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*William B. Phelps,* for appellant.

*Jaques & Hudson,* for respondent.

BUNN, J.

During the year 1909 defendant owned and operated a sluicing dam across the Whiteface river, in St. Louis county. Plaintiff owned and operated a sawmill on Whiteface river, some eight miles below defendant's dam. Plaintiff had constructed a pier in the river above its mill, and booms for catching and holding its logs. In May, 1909, plaintiff had a quantity of logs in the pocket formed by the booms and pier. Defendant on May 13 began sluicing logs through its dam. When these logs reached the pier of plaintiff they became jammed. The pressure caused the pier to topple over, and all of the logs, including those of plaintiff, passed downstream, and were lost to plaintiff.

In July, 1909, plaintiff had logs in the river about half way between defendant's dam and the mill. There was not sufficient water to float these logs, and at plaintiff's request defendant agreed to furnish water from its dam to let the logs down to the mill. So much water was furnished, either by defendants or by the heavens, that the logs floated down the river past the mill and were lost. Plaintiff's logs were not marked, or at least the marks had not been recorded in the office of the surveyor general of logs of the district.

In its complaint plaintiff alleged two causes of action. The first was based upon allegations that defendant on May 13, 1909, negligently and wrongfully released from its dam great quantities of water, causing a great flood to rush down upon and through plaintiff's mill, sweeping away its boom and stone pier, loosening the foundations of the mill, and sweeping plaintiff's logs down the river,

where it was impossible to recover them. The second cause of action was based upon allegations that on July 17, 1909, when defendant agreed to furnish water to float plaintiff's logs to the mill, it had negligently left its own logs in the river, so that, when plaintiff commenced to drive its logs, they became mingled with defendant's logs, and that on July 21 defendant negligently and wilfully opened its dam and precipitated a large body of water into the river, causing plaintiff's logs, intermingled with defendant's, to be swept down the stream and lost. These allegations were denied in the answer; defendant alleging that, if plaintiff lost any logs, such loss was caused by heavy and unusual rains and by plaintiff's negligence.

On these issues the case was tried, and resulted in a verdict for plaintiff. A motion for a new trial was denied, and judgment entered on the verdict. From this judgment, defendant appealed.

1. In our opinion there was ample evidence to support the finding of the jury that the floods of water in May, and again in July, were caused by negligent operation by defendant of its dam.

2. It is urged that plaintiff had no right to construct its pier where it did; that this was an obstruction to navigation, and contributed to the loss of the logs swept down the river in May. The evidence presented a fair question for the jury as to whether this pier and plaintiff's boom were in the current of the river, or in dead water, and the verdict, approved by the trial court, is final on this question.

3. Defendant contends that in no event can plaintiff recover for the logs that went down the river mingled with defendant's logs on July 21, for the reason that these logs had no marks that had been recorded. This contention is based on R. L. 1905, § 2580, the material part of which reads: "All logs and timber found in the waters of any lumber district, not in the possession or under the control of any person, which have no distinctive mark or marks which are not recorded in the proper district, shall be deemed abandoned and shall not be recognized as property by the courts." But this statute provides only that *"logs not in the possession or under the control of any person"* shall be deemed abandoned, and shall not

be recognized as property, when they do not have marks which have been recorded. . The logs in question were in the possession of, or at least under the control of, plaintiff until such possession or control was lost by reason of the negligent acts of defendant. They were on the bank when defendant agreed to furnish water to drive them, and were put into the river by plaintiff at a time when it was justified in assuming, if the evidence of plaintiff's witnesses is believed, that defendant was "through with the river," and that its logs would not become intermingled with defendant's. We think that the statute does not apply. Plummer v. Mold, 14 Minn. 403 (532); Stanchfield v. Sartell, 35 Minn. 429, 29 N. W. 145.

4. Contributory negligence is claimed in plaintiff's failure to have its log marks recorded, the argument being that the logs could have been recovered after they had floated downstream had the marks been recorded. Conceding that this is so, plaintiff was guilty of no negligence that contributed to the escape of the logs from its possession, but only of a prior omission that made it impossible to prevent the loss or part of the loss that resulted from defendant's negligence. Plaintiff's negligence, in order to defeat his remedy, must have been a proximate cause. Though he was negligent in some stage of the transaction, and though without this negligence the loss would not have occurred, yet the occurrence itself as and when it happened was not due to plaintiff's omission, but to defendant's wrongful act. If a passenger on a railroad train is wrongfully ejected on a cold and stormy night, the fact that he was unprovided with an overcoat, while it might be negligence, would not be contributory negligence, and would affect neither the right of recovery nor the measure of damages. In other words, there was no causal connection between plaintiff's failure to record its log marks and the injury complained of. That the log marks were unrecorded was a condition, not a cause.

5. Defendant complains of instructions given by the trial court, and of the refusal to give instructions as requested. We have considered the instructions given and refused, and the charge as a whole, and reach the conclusion that there was no prejudicial error, and that the case was fairly submitted to the jury.

Judgment affirmed.