## A. C. SOMERS v. FRANK KANE AND OTHERS.[1]

January 30, 1925.

No. 24,428.

**Abandoned log statute a valid exercise of police power.**

1. Section 5474, G. S. 1913, providing that unmarked logs found in the navigable waters of the state, not in the possession or under the control of any one, shall be deemed abandoned, is a constitutional exercise of the police power.

**Logs which are excepted from statute.**

2. Logs lying at the shore of the owner's land in such a situation that they do not float away are not within the operation of the statute.

**Logs which are within the statute.**

3. Unmarked logs which drift into waters which are a common highway with no attempt to regain control over them are within the statute.

[1]Reported in 202 N. W. 27.

**Estoppel against plaintiff in action in replevin.**
   4. Where a plaintiff obtains possession of property in replevin, he is estopped from denying it was of the value which he alleged in the proceedings by which he obtained such possession.

Action in replevin in the district court for Lake county to recover possession of certain logs or $2,550, their value. Defendants' motion to strike out the amended reply which alleged the logs were of the value of $1,327.20, was granted. The case was tried before Magney, J., who granted their motion for a directed verdict in favor of defendants Kane and Armstrong. Plaintiff's motion for a new trial was denied. From the judgment in favor of defendants Kane and Armstrong, plaintiff appealed. Reversed.

*Jenswold, Jenswold & Dahle,* for appellant.

*Fryberger, Fulton, Hoshour & Ziesmer,* for respondents.

TAYLOR, C.

Plaintiff and his brother owned a tract of land on the northwesterly shore of a small lake known as Nine Mile lake in Lake county. A railroad touches the lake on the southeasterly shore and furnishes the only means of transporting timber to market from that locality. In the winter of 1913 and 1914, plaintiff and his brother cut the merchantable timber on their land and banked the logs on the lake— the larger part on the ice, but some in rollways on the shore. They failed to make a sale of the logs, and in the spring placed booms around them, the ends of which were chained to trees on their own land. They removed from that locality in 1915, leaving the logs as originally banked and boomed. Plaintiff's brother transferred his interest in the logs to plaintiff. At some unknown time, the booms broke and the greater part of the logs became scattered over the lake. They had been boomed where the lake near the shore is shallow with a bottom of soft mud, and those lying in this mud as well as those left on the rollways remained as originally placed. In 1920 defendants Kane and Armstrong gathered the logs from the different parts of the lake and loaded them on cars. While they were on the cars, plaintiff brought this action in replevin to recover possession of them and alleged that they were of the value of $2,550.

He gave the necessary bond and had the sheriff take possession of the logs. Defendants did not rebond and the logs were delivered to plaintiff who sold and disposed of them. At the trial the court directed a verdict in favor of defendants Kane and Armstrong for the return of the logs or for the sum of $2,485. Plaintiff moved for a new trial which was denied. Judgment was entered on the verdict and plaintiff appealed.

The logs in controversy were not marked, and the trial court based its ruling upon section 5474, G. S. 1913, which contains this provision:

"All logs and timber found in the waters of any lumber district, not in the possession or under the control of any person, which have no distinctive mark, or marks which are not recorded in the proper district, shall be deemed abandoned, and shall not be recognized as property by the courts."

Plaintiff contends that this statute violates the constitutional provisions that no person shall be deprived of his property without due process of law, nor be denied the equal protection of the laws, nor a remedy for wrongs.

The original of this statute was enacted in 1862. As found in the General Statutes of 1866, c. 32, § 23, it read as follows:

"Any logs or timber cut in this state, or coming into this state in the first district at any point on the lake St. Croix above the city of Stillwater, the marks of which are not recorded in the district in which they were cut or into which they may come, and all logs or timber not bearing any distinctive mark shall not, in favor of the person who has cut the same or claims to be the owner thereof, be recognized, deemed or held in any of the courts of this state to be the property of any such person, for any purpose whatever, in any action or proceeding."

In Plummer v. Mold, 14 Minn. 403 (532), decided in 1869, it was contended that the statute barred the plaintiff from proving ownership of unmarked logs which he had delivered at a mill. The court said that this provision was a part of the laws regulating the floating of logs down streams declared to be public highways for that

purpose; that the purpose in requiring logs to be marked was to provide a means of identifying the logs of different owners which were floated down such public highways intermingled; that there was no necessity for identifying them by marks unless they were afloat on a public highway; and that this provision did not "apply to logs which are on land, and in the actual possession of the owner, and thus clearly not within the mischiefs which the statute intends to provide against."

In Stanchfield v. Sartell, 35 Minn. 429, 29 N. W. 145, the logs bore an unrecorded mark. The court said that it had been held in the Plummer case that the statute was not intended to apply to logs on land and in the actual possession of the owner, but only to logs floated or driven upon waters which were a common highway, and that the same rule applied to logs in water if confined in a bight or inlet on the owner's land, or inclosed by booms apart from the channel, "or otherwise so situated that they could not float into the stream, or become intermingled with other logs for the floatage of which the common highway might be used."

The court said that the facts did not bring the logs, there in controversy, within the operation of the statute and that it was unnecessary "to consider whether, as applied to any possible circumstances falling within the purpose and scope of the statute, it would be unconstitutional."

The statute was cast into its present form at the revision of the laws made in 1905. The change in language was doubtless, in part, to make it conform in terms to the construction which had been given to it by the court. The three following cases arose since the revision.

In Astell v. McCuish, 110 Minn. 61, 124 N. W. 458, plaintiff gathered unmarked logs floating in the St. Croix river or lodged against the bank, marked them and recorded the mark, and then formed them into a raft and towed them to Stillwater. At Stillwater the defendant took possession of them, claiming them for the boom company under its charter which provided that unmarked logs coming into the booms of the company should be its property. The court said that these logs were abandoned logs within the meaning

of the statute; that the statute has reference to all unmarked logs floating in the river and "justifies any person in taking possession thereof and claiming them as his own;" that the logs there in controversy were not the property of the boom company, for they had never come into its booms, and that the plaintiff was the owner of them.

In Cotton Lumber Co. v. St. Louis River D. & I. Co. 115 Minn. 484, 132 N. W. 1126, the defendant had a sluicing dam across the river a few miles above the plaintiff's mill. Plaintiff put a quantity of unmarked logs into the river below the dam for the purpose of running them to its mill. Defendant released such a quantity of water that these logs became intermingled with other logs and were carried down the river and lost. Plaintiff sued for damages, claiming that the logs had been lost through defendant's negligence. The defendant insisted that the statute barred a recovery. The court said that under the statute only "logs not in the possession or under the control of any person" are to be deemed abandoned; that these logs were under the control of plaintiff until such control was lost by reason of the negligent act of the defendant; and that the statute did not apply for the reason that the plaintiff put its logs into the river at a time when it was justified in believing that they would not become intermingled with others.

In Sheldon-Mather Timber Co. v. Itasca Lumber Co. 117 Minn. 355, 135 N. W. 1132, the plaintiff had a quantity of logs bearing a recorded mark and another quantity bearing an unrecorded mark intermingled in the river, and delivered the entire lot to the defendant under a contract by which the defendant agreed to drive them to a specified point on the stream and there remove the logs bearing the unrecorded mark from the river, scale them and pay plaintiff for them. Defendant insisted that the statute barred the plaintiff from recovering for the logs bearing the unrecorded mark, but the court held that they were not abandoned within the meaning of the statute, for the reason that they were under the control of the defendant from the time of their delivery by plaintiff until they were converted by defendant.

Lumbering has been recognized as one of the important industries of this state from the beginning and all streams capable of floating logs were declared public highways for that purpose at an early date. The logs of different owners were thrown into these streams and unavoidably became intermingled as they were driven to the mills or to market. That the logs of the different owners might be easily identified, the law provided for marking them and for recording the marks. To secure an observance of those provisions, and to prevent controversies and litigation between the users of these common highways, the law here in question was enacted. The extensive lumbering industry of the state has operated under it and recognized it as a valid law for more than 60 years. It is true as stated by plaintiff that this court has never expressly passed upon the question of its constitutionality. The court apparently assumed that the statute was valid, and disposed of most of the cases in which it was invoked on the ground that the facts did not bring them within its operation. It was given full force and effect, however, in the Astell case, but its validity seems not to have been challenged in that case. Where a statute has been acquiesced in and acted upon in such important matters and for such a length of time, a court will not declare it unconstitutional if by any reasonable construction its validity can be sustained.

But, aside from such considerations, we think the legislature was within its prerogative in declaring that logs, not marked for identification as provided by law, found in waters used as a common highway for the floating of loose logs, and not in the possession or under the control of any one, should be deemed abandoned. As interpreted in the cases cited, we think the statute is within the police power of the state. See Osborne v. Knife Falls Boom Corp. 32 Minn. 412, 21 N. W. 704, 50 Am. Rep. 590; Lindsay & Phelps Co. v. Mullen, 176 U. S. 126, 20 Sup. Ct. 325, 44 L. ed. 400.

Plaintiff alleged in his complaint, and the answer admitted that the logs were of the value of $2,550. Thereafter plaintiff served an amended complaint alleging that the logs were of the value of $1,327.20. The amendment was stricken on defendant's motion on the ground that plaintiff having obtained possession of the property

could not dispute the value as alleged by him in the complaint, bond and affidavit under which he obtained such possession. We think the ruling was correct. Weyerhaeuser v. Foster, 60 Minn. 223, 61 N. W. 1129.

The statute does not apply to logs in the possession or under the control of the original owner or of those to whom he has intrusted them. The logs on the rollways were on plaintiff's land and in his possession and were not within the operation of the statute. Some of these logs were taken but their full value was deducted in fixing the amount of the verdict.

Logs lying in shallow water and partly imbedded in the mud on the shore of plaintiff's land were also taken. He was allowed nothing for these. They were not adrift on the lake and had not passed out of his control within the meaning of the statute. They were still his property, and it was error to direct a verdict against him for an amount which included their value. For this reason there must be a new trial.

According to the evidence, the logs which floated away after the booms broke were permitted to drift about the lake for two years or more with no attempt to recapture them or regain control over them in any manner. They were taken by defendants at a time when other logs were in the lake. They were within the operation of the statute, and could be lawfully taken and appropriated by defendants. But the judgment is reversed for the reason above stated.

Reversed.