OLGA S. TRIPPLET v. ANTHONY G. HERNANDEZ AND
ANOTHER.
EDDY D. TRIPPLET v. SAME.
JOSE RAMIREZ, APPELLANT.[1]

December 26, 1952.

Nos. 35,824, 35,825.

[1]Reported in 56 N. W. (2d) 645.

*Charles H. Weyl,* for appellant.

*Grannis & Grannis,* for respondents Tripplet.

*Sullivan, Stringer, Donnelly & Sharood,* for respondent Hernandez.

FRANK T. GALLAGHER, JUSTICE.

Appeals from orders of the district court denying the motion of defendant Ramirez in each case for judgment notwithstanding the verdict or for a new trial.

Olga S. Tripplet and Eddy D. Tripplet, husband and wife, each brought an action against Anthony G. Hernandez and Jose Ramirez for damages for personal injuries and property loss claimed to have been sustained on account of an accident which occurred in the early morning of January 13, 1950, on what is known as the Warner Road in the city of St. Paul. Later, Hernandez brought an action against Eddy D. Tripplet and Ramirez for personal injuries and property loss claimed to have been sustained in the same accident. Hernandez moved to have the cases consolidated for trial. The defendants in that case objected, but the motion was granted, and the cases were tried together before a jury. In the action brought by Hernandez the verdict was in favor of Eddy D. Tripplet and Ramirez. In the Tripplet actions, verdicts were rendered in favor of Olga S. Tripplet and Eddy D. Tripplet against Hernandez and Ramirez. Alternate motions were made by Ramirez in each of the Tripplet cases for judgment notwithstanding or a new trial, and, upon denial, these appeals were taken. Hernandez did not join

in the appeals but filed a brief and appeared by counsel at the oral argument, in which he took the general position that there was no error at the trial which would justify any relief to Ramirez on appeal.

The only fact witnesses were Eddy D. Tripplet, Hernandez, and Ramirez. Their testimony is very conflicting, especially with reference to the various positions of the cars before and after the accident. It will serve no useful purpose to go into detail with reference to the testimony, except to point out the general area where the accident occurred, the different places in which the parties involved place the various cars, and the general weather and road conditions.

At the outset, it is undisputed that all the parties involved were on their respective ways to work between five and six o'clock in the morning. It also appears that it was dark and that visibility was affected by the falling of a light drizzle of freezing sleet, rain, or snow, which frosted the windshields of the cars quickly and made the street somewhat icy and slippery. Hernandez and Ramirez stopped their respective cars from time to time in order to clean their windshields. Tripplet admitted that his windshield was somewhat obstructed but said that his windshield wipers and defroster were operating so that it was not necessary for him to stop for that purpose. There were only the three cars at or near the scene of the accident, all 1937 models of various makes. The Tripplet car was going west on Warner Road; the Hernandez car was going east on the same road and was behind the Ramirez car, which had been parked on the side for a brief time while Ramirez was cleaning the windshield on his car.

While we refer to the highway where the accident occurred as Warner Road, it must be remembered that it is a paved city street 40 feet wide, with a curb on each side, running in a general east-west direction within the corporate limits of St. Paul. Somewhat west of the scene of the accident there is a curve in the road and the street comes onto what is known as the Reserve street bridge which goes over the railroad tracks. It appears from the record that the street was not entirely clear of snow that morning; that

the east and west traffic had worn away the snow so that the pavement was exposed and looked black; and that between these two lanes there was a narrow white space approximately in the center of the street which was snow. There was snow on the street north and south of these black lanes, and at the curbs the snow was a little higher where it had been thrown by the plows.

Mr. Tripplet testified that he and his wife left their home in Newport about five o'clock that morning in his 1937 Chevrolet, as was their custom, in order to go to their respective jobs in St. Paul; that he drove along highway No. 61 until it met Warner Road; and that he then turned west on that road to enter downtown St. Paul and approached the bridge. He said that as he approached the scene of the accident he was driving at a speed of 10 to 15 miles an hour. He explained that the weather was "kind of musty," with a freezing mist; that it was very dark that morning; and that the headlights were lighted on his car. He claims that he first observed the Hernandez car coming from the opposite direction over the bridge, 300 or 400 feet away, at a speed of what he thought was 40 to 45 miles an hour; that he (Tripplet) then started to press his brakes to slow down even more because of the road condition; and that as the Hernandez car got closer and he could see that it was going to hit his car he pulled over as far as he could "to the right of the road and to the curb." It was his position that the collision occurred about 150 feet from the east end of the bridge and that the Hernandez car was on the north side of the road when it collided with his car. He said that as he approached the scene of the accident he observed the Ramirez car about 50 feet east of the bridge, parked on the south side of the center line without any lights, facing east, about two feet from the south curb.

Hernandez claims that the Ramirez car was parked some 300 or 400 feet east of the bridge, headed in the same direction that he was going; that it was without lights and was standing four or five feet from the curb of the road, although he could not actually see the curbing on account of the snow; that it was about 30 feet away from him when he first observed it; and that he (Hernandez)

was traveling as close to the south curb and snowbank as possible at a speed of from 15 to 20 miles an hour. He explained that the last time he got out of his car to clean his windshield he stopped about 50 feet east of the bridge at about the curve in the Warner Road. It was his position that the Ramirez car was still parked at the time of the accident and that the collision occurred just west or almost even with the Ramirez car at about the center line. He testified that after he saw the Ramirez car he started to gradually pull out toward the north and that the collision occurred in the center of the road. He said that although he saw no one in front of the Ramirez car there were no lights on and he thought that the driver was cleaning his windshield; that he proceeded slowly around the left of the car to avoid hitting it; and that as he did so he "figured" that he left one to three feet between the Ramirez car and his own, but that he did not get beyond the parked car before the collision occurred between his car and the Tripplet car.

Ramirez tells a different story. He lives in South St. Paul and as he proceeded to work that morning at the Cudahy Packing Company plant, accompanied by his wife and some others, he had trouble keeping the windshield clean on account of the freezing rain. He said that he stopped first on the Robert street bridge to clean his windshield, again before he came to the bridge on Warner Road, and the third time when he was about 400 feet east of the bridge and as close to the right-hand curb as he could get. He claims that his parking lights, as well as the taillights, were on when he stopped; that he got out and cleaned his windshield; and that as he did so he saw headlights coming from the east but none from the rear. He claims that after completing the cleaning of his windshield he again started to drive east and that after he had gone approximately 15 feet approaching headlights passed him going in the opposite direction. He further states that a short time after this automobile passed his car he heard a noise behind him but could not tell how far behind; that he did not stop but proceeded on to the Cudahy plant; and that he first heard of the accident later that

day while at work but did not know that the accident caused the noise which he had heard.

The evidence given by the parties involved is conflicting, which makes it obvious that the fact issue was one for the jury to determine. Upon review, we must necessarily consider the evidence in the light most favorable to the prevailing party.

The questions raised by Ramirez on appeal are:

(1) Did he create an emergency which was the proximate cause of the accident?

(2) Were there errors at the trial which would require a new trial?

Ramirez assigns as error (1) that the Tripplets fail to establish a cause of action against him; (2) that the evidence does not justify the verdicts in favor of the Tripplets and against him and are contrary to law; (3) that the trial court should have granted his motion for a directed verdict made at the close of the evidence; (4) that the court erred in giving the jury the emergency rule and in submitting M. S. A. 169.32, paragraph one, and that, inasmuch as paragraph one was submitted, the court also should have submitted paragraph two of that section; and (5) that the court abused its discretion in permitting two arguments on behalf of the Tripplets and two on behalf of Hernandez.

■ It is our opinion under the record here that the jury could have considered that Ramirez did create an emergency condition which was the proximate cause of the accident. Both Tripplet and Hernandez testified that Ramirez had no lights on his car while it was parked on Warner Road at or about the time of the accident. Hernandez, who was behind the Ramirez car at some time, said that there was no taillight and that only the headlights were on when Ramirez pulled away after the accident. Ramirez, on the other hand, claimed that both the headlights and taillight were lighted on his car; that when he stopped on Warner Road to clean the windshield he put on his parking lights; and that when he started again he turned on the driving lights. These conflicts in the testi-

mony with reference to lights and positions of the cars were all matters which the jury had a right to consider in determining whether an emergency condition was created by the Ramirez car. It is therefore our opinion under the facts and circumstances here that the trial court did not err in instructing the jury on the emergency rule as it did.

■ We have carefully considered other assignments of error and find no errors which would justify a reversal. It is evident from the record that Tripplet did establish a cause of action against Ramirez; that the verdicts are justified by the evidence and are not contrary to law; and that there was no reversible error in the trial court's failure to grant Ramirez' motion for a directed verdict at the close of all the evidence.

■ Ramirez claims error on the part of the trial court in including in its charge the first paragraph of § 169.32 and, having done so, in not including the second paragraph of the section. These paragraphs provide:

"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway.

"This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

Ramirez argues in his brief that, because of the weather conditions that morning creating a mist or light rain which froze on

contact, one could not drive any great distance without having his windshield frosted to such an extent that there was practically no vision and that he was experiencing just such difficulties. It is his position that when he got out of his car the last time to scrape his windshield he was two to five feet from the south curb, which would leave at least 30 feet of unobstructed highway alongside his car. It is his further claim that if the car was standing where Hernandez testified it was there would be a clear view of more than 200 feet. He contends that his automobile was not parked within the meaning of the statute, and argues that, although a standing car is commonly referred to as being parked, the term as used in the statute is well known and understood and that to "park" means something more than the mere temporary or momentary stoppage on the road for necessary purposes, citing Hartwell v. Progressive Transp. Co. Inc. 198 Minn. 488, 270 N. W. 570.

That case involved a truck collision, and, while the fact situation was not the same as in the case at bar, this court did say, in construing the statute under consideration there (Mason St. 1927, § 2720-24[a, c]), that from the title of the act and its context it seemed clear that the words "parked" and "left standing" meant the same thing. The accident in that case occurred on a trunk highway approximately one mile south of Owatonna. To the south of the place of the accident was a hill sloping northerly, and beyond that was another hill which sloped in the opposite direction. As the highway was constructed, both slopes were gradual, uniform, and free from bumps or depressions. There was a gradual rise to the north as one drove from the lowest point between the two hills. The highway was paved 18 feet in width and on each side was a shoulder of earth and gravel about 6 feet in width, with the shoulder sloping toward the ditch about half its width. At the time in question (about 4:30 o'clock in the morning of April 3), the shoulders were rather soft due to seasonal changes. Defendant's truck had been driven northerly upon this highway. It had gone up the northerly hill about 320 feet from the lowest point between the crest of the two hills, when the motor suddenly stopped because

of an empty gasoline tank. The truck was heavily loaded, so the driver and his helper concluded at once to back the truck by means of gravity—the only means available—so as to get the truck onto the easterly shoulder as far as possible in order to provide more adequate space upon the highway for passing traffic. Having accomplished this backing operation, which took about two minutes, the men planned to place flares upon the highway, but before they could get out of the cab for this purpose their truck was struck from the rear by plaintiff's truck, also traveling north. After describing conditions as to darkness and haziness of the atmosphere, plaintiff testified that he observed defendant's truck when he was 15 to 30 feet away and that he swerved to get by it but that the collision followed almost instantly. There was a jury verdict for defendant, and, upon appeal from an order denying plaintiff's motion for a new trial, this court affirmed, taking the position that if plaintiff had kept a proper lookout he could not have helped seeing the large cream-colored truck ahead of him in time to avoid the collision.

We do not regard the fact situation in that case in point with the case at bar. Rather, it appears to us here that it was a fact question whether or not Ramirez violated the first paragraph of § 169.32 in view of our language in the Hartwell case that the words "parked" and "left standing" mean the same thing. It would seem possible from the record here for a jury to find that the Ramirez car was parked or left standing for a time on the traveled portion of the highway where there was no clear view of the vehicle for a distance of anywhere near 200 feet as required by the statute, especially in view of testimony that there were no lights on his car, no taillight burning, and that Hernandez did not see the car until he came within about 30 feet of it. Neither do we consider it error that the court failed to submit the second paragraph of § 169.32. It does not seem to us that it properly can be said under the facts and circumstances here that the Ramirez car was disabled in such a manner at the time it was stopped as to come within the meaning of that paragraph.

In Dillon v. Sterling Rendering Works, Inc. 106 Colo. 407, 411, 106 P. (2d) 358, 361, it was held that an automobile was not disabled, within the meaning of a statute similar to § 169.32, when a motorist, who was driving in fog, sleet, and freezing temperature, stopped his automobile for the purpose of removing frost which had covered his windshield . Even the testimony of Ramirez himself that immediately following his cleaning of the windshield he entered his car and drove on before the accident occurred would indicate that his car was not disabled in the sense that it could not be moved, as in the case where something suddenly goes wrong with the motor so that it is impossible to move a car on a highway.

■ We come now to the final contention of Ramirez that the court abused its discretion in permitting the argument it did. We again can find no reversible error, since the matter clearly was within the discretion of the trial court. It is true that the situation was somewhat unusual, in that one firm of attorneys represented the Tripplets in their actions against Hernandez and Ramirez. In those actions, one firm represented defendant Hernandez and another lawyer represented defendant Ramirez. Then, in the action brought by Hernandez against Eddy Tripplet and Ramirez, still another attorney represented Hernandez and an additional firm represented Tripplet, but Ramirez was represented in that case by the same attorney who appeared for him in the Tripplet cases. This situation left Ramirez' lone attorney to present his side of the case in all actions, while there were two sets of attorneys for Tripplet and two sets of attorneys for Hernandez. In view of the fact that the court consolidated all the actions, it was within its discretion to permit all the representing attorneys to present their arguments. While it is quite evident here, in view of the fact that Hernandez did not appeal, that he was satisfied with the jury's finding as to his liability, it is also evident that he would be quite well satisfied with the jury's finding that Ramirez was also negligent. It is possible that under the peculiar situation here, where Hernandez brought a separate action against Eddy Tripplet and Ramirez, that he might have had in mind the advantage he would

have in presenting two arguments, but it was within his rights to bring such an action. It was within the discretion of the trial court as to what should be done with reference to arguments under such a situation, even though it may have placed Ramirez' sole attorney at some disadvantage. If the circumstances in such instances are such that it is apparent that any undue or unfair advantage is being taken of any particular litigant, it is still within the province of the trial court to determine what should be done, keeping in mind at all times that no unfair advantage shall be taken against any litigant which would result in a miscarriage of justice.

Affirmed.

