MARY SIMON AND ANOTHER v. GLENN·CARROLL.
MELVIN THORSON AND ANOTHER v.
SIDNEY SIMON AND ANOTHER.
GLENN CARROLL, APPELLANT.[1]

February 11, 1954.

Nos. 36,072, 36,073, 36,074, 36,075.

---

[1]Reported in 62 N. W. (2d) 822.

212

*Nelson, Casey & Tripp* and *Brenner & Schnell,* for appellant.

*James K. Rietz,* for respondents Sidney and Mary Simon.

*Moonan, Moonan, Friedel & Senn* and *Lord & Walbran,* for respondent Sidney Simon.

*Arthur Olsen* and *Donald T. Barbeau,* for respondent Thorson.

*Cook & Keyes,* for respondent Schiller.

MATSON, JUSTICE.

In each of four actions consolidated for trial defendant Carroll appeals from an order denying his motion for judgment notwithstanding the verdict or a new trial.

We are here concerned with the following issues: (1) The right of a party who is both plaintiff and defendant in a joint trial to appear in each capacity by a separate set of attorneys, (2) whether an attorney who appears for a party in his capacity as a defendant may cross-examine a witness who appears for the same party in his capacity as a plaintiff, (3) the foundation necessary for testimony as to the reputation of a witness for truth and veracity, (4) negligence, (5) contributory negligence, and (6) proximate cause.

At midday on October 17, 1951, Sidney Simon was driving south on a graveled road south of Owatonna, Minnesota. In the car with him were his wife, Mary Simon, and his mother-in-law, Matilda

Schiller. At the same moment Glenn Carroll, with plaintiff, Melvin Thorson, as a passenger, was traveling north on the same road. The two cars collided head on at a point 155 feet north of the crest of a small, sharp hill. From grass line to grass line the graveled portion of the road was 19 feet wide. Matilda Schiller was fatally injured, and all the other persons involved were injured in varying degrees.

Mary Simon and Sidney Simon each brought a separate action against Glenn Carroll. Melvin Thorson, for himself, and Joseph F. Schiller, as trustee of the estate of Matilda Schiller, brought separate actions in which Sidney Simon and Glenn Carroll were joined as defendants.

The evidence is conflicting, but viewing it as we must in the light most favorable to the verdict, it appears that defendant Carroll was driving his Lincoln car in the center of the road and up to the crest of the hill at a speed of 70 to 75 miles an hour. After passing the hill crest his car traveled north another 150 feet where it collided head on with the Simon car. After the collision Carroll's car came to rest facing in a northwesterly direction with its rear wheels entirely off the gravel portion of the road and its front wheels east of the center line. Skid marks extended from the Carroll car southward toward the hill crest for a distance of 80 feet. At its southerly terminus the left-wheel skid mark commenced near the center road line. In its stopped position the Simon car, facing southeasterly, had its right rear wheel just over the west side grass line. Debris was scattered on both sides of the center line. The two cars, after colliding with each other, were hit by a third car which to some extent may have changed their positions as well as the distribution of the debris.

█ In evaluating the evidence to ascertain whether either driver was negligent we cannot overlook that, although it was customary for motorists proceeding in either direction to follow a single set of tracks down the middle of the road, the record clearly shows that the portion of the roadway involved herein was usable for motor vehicle travel for its entire graveled width of 19 feet. Aside from such custom there is no evidence indicating that either driver had a

reasonable ground for not keeping to his right half of the road in compliance with M. S. A. 169.18, subd. 1, which provides:

"Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:" (None of the statutory exceptions are here involved and will therefore not be enumerated.)

Since the enactment of § 169.18 in 1937[2] custom as a factor in and of itself has had no statutory recognition as a justifiable cause for a motorist's failure to keep to his right half of a road when such half is of sufficient width and is otherwise reasonably usable. The prior statute (Mason St. 1927, § 2720-9) which was expressly repealed[3] simultaneously with the adoption of the present highway act—of which § 169.18 is a part—did give recognition to custom when it provided that "the driver of a vehicle shall drive the same upon the right half of the *traveled portion* of the highway."[4] (Italics supplied.) In expressly repealing Mason St. 1927, § 2720-9, and simultaneously enacting in lieu thereof § 169.18, subd. 1, without carrying forward into the new act any reference to the "traveled portion" of the road, the legislature must have intended to abolish custom as a justification for unnecessary driving in any degree to the left of the road center line. It follows that, pursuant to § 169.18, subd. 1, *despite the existence of any custom to the contrary,* the act of driving a motor vehicle to any extent whatever to the left of the center line of a roadway of sufficient width, constitutes prima facie evidence of negligence (§ 169.96) and the prima facie case so established must prevail against the violator in the absence of countervailing evidence showing a statutory or other reasonable ground for such violation. Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409; Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553.

 The evidence sustains a finding that Carroll was negligent and that his negligence was a proximate cause of the collision. He

---

[2]L. 1937, c. 464, §§ 32 to 39.

[3]L. 1937, c. 464, § 144.

[4]Lahiff v. McAloon, 152 Minn. 517, 189 N. W. 435; Keane v. Butner, 150 Minn. 90, 184 N. W. 571; cf. Mason St. 1927, § 2720-9, and G. S. 1913, § 2552.

admitted that he knew the hill was bad and would wholly obscure his vision to the north until he reached its crest. The sheriff testified that he found, as a result of an experiment performed with his own car, that the Simon car, which was still standing where it came to rest after the collision, could not be seen at all by a motorist approaching from the south until such motorist had reached a point 161 feet south of the point of impact or was within six feet of the crest of the hill. In addition to Carroll's prior familiarity with the road, well-defined wheel tracks put him on notice that he was likely to meet other motorists proceeding down the middle of the road. Despite his realization that other approaching vehicles in a position of danger might be hidden from his view by the hill, he drove at the excessive speed of 70 or 75 miles per hour until he reached the hill's crest when, according to his own testimony, he for the *first time* saw the Simon car only a block away. Thorson, his front seat passenger, first saw Simon's car when it was 200 feet distant. Simon said the Carroll car was 200 feet away when he saw it come over the hill.

Section 169.14, subds. 1, 2, and 3, limits a motorist to a speed no greater than is reasonable with respect to the surrounding actual and potential hazards and then provides that, in the daytime on roads outside municipalities, a speed in excess of 60 miles per hour is prima facie evidence of an unreasonable and unlawful speed, subject, however, to the further qualification that a motorist shall drive at *reduced speed* when approaching a hill crest. Despite the fact that Carroll veered his car completely to his side of the road prior to the moment of impact, the jury, in the light of the surrounding circumstances, could reasonably find that Carroll's speed of 70 or 75 miles an hour (and even as such speed may have been reduced after his car came over the hill) was a proximate cause of the accident because it deprived Simon of the time reasonably necessary to turn his car to a place or course of safety. The reasonableness of a motorist's speed is always to be gauged by the surrounding actual and potential hazards of which he has knowledge or, which he, as a reasonably prudent man, ought to have anticipated, and *in ignoring such hazards with respect to an area where his vision*

*is obscured,* he cannot be heard to say that his unreasonable speed, as a matter of law, was not a proximate cause merely because there would have been no collision if the other vehicle had been in its proper lane of travel. The fact that Simon was violating the statute in not driving his car wholly on his side of the road, did not relieve Carroll of his duty to drive at a reasonable rate of speed to avoid a collision. The momentary possession of the right of way is not a license to proceed without due care for the safety of others. Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685.

■ There is no evidence of contributory negligence on the part of any of the passengers in either car. On the other hand, in the absence of evidence showing a reasonable ground for driving in part on the left side of the road, Simon was not merely prima facie negligent but negligent as a matter of law. The question remains, however, whether his negligence was *contributory* in the sense that it was a proximate cause of the collision. Whether negligence, even though it be established as a matter of law, is a proximate cause of an accident, may be either a question of fact or a question of law. Causation, like negligence itself, is a fact issue for the jury except when the facts are undisputed and are reasonably susceptible of but one inference.[5] It is not a decisive test of contributory negligence that the accident would not have happened without the plaintiff's negligence.[6] If in the light of the entire evidence reasonable men can differ as to whether there is a causal connection between plaintiff's negligent act and the happening of the collision, the question of proximate cause is for the jury. As applied to the instant case, is the undisputed fact that Simon negligently drove to the left of the center line susceptible only of one inference; namely, that such negligent act was a proximate cause of the collision; or is it an issue over which reasonable minds can differ? It is true that if Simon had been entirely on his side of the road the accident would

[5]Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 540, 16 N. W. (2d) 758, 763; Bryant v. N. P. Ry. Co. 221 Minn. 577, 583, 584, 23 N. W. (2d) 174, 178, 179; 4 Dunnell, Dig. & Supp. § 7015.

[6]Cotton Lbr. & Merc. Co. v. St. Louis River D. & I. Co. 115 Minn. 484, 132 N. W. 1126; 4 Dunnell, Dig. & Supp. § 7015.

not have occurred, but as already noted this in itself is not a decisive test. Simon testified that, after Carroll's sudden and high-speed appearance over the hilltop, he tried to turn to the right from his middle-of-the-road position of danger but that he had no time to do so. The jury under the circumstances could reasonably find that, had Carroll been driving at a reasonable rate of speed, Simon would have been enabled to turn to the right from his negligent though customary course of travel and that the accident would then not have occurred. It follows that the jury could reasonably find that Carroll's excessive speed was the sole proximate cause of the accident and that Simon was *not* guilty of contributory negligence as a matter of law.

Certain issues have been raised by the appellant as to the right of Simon—who appears in the dual capacity of plaintiff in one action and defendant in another—to be represented by two sets of attorneys and also as to the rights of cross-examination and of argument. When actions involving a common question of law or fact are consolidated for the sole purpose of conducting a joint trial (Rule 42.01 of the Rules of Civil Procedure) no merger of the actions results, and each action retains its separate identity and no increase, diminution, or change in the fundamental rights or status of the respective litigants occurs by virtue of such consolidation for joint trial.[7] In consequence of these basic considerations it follows that, in a joint trial where a party is plaintiff in one action and defendant in another, the trial court in its discretion may, for the furtherance of justice, permit such party to appear by two separate sets of attorneys. Whether each set of attorneys is to be permitted a separate argument to the jury—and to what extent—rests in the sound discretion of the trial court. Tripplet v. Hernandez, 238 Minn. 208, 56 N. W. (2d) 645.

Here Simon was represented by one attorney, James K. Rietz, in the suit brought by him against Carroll and by still another attorney, Joseph N. Moonan, in the Thorson and Schiller actions

---

[7] See, Chellico v. Martire, 227 Minn. 74, 34 N. W. (2d) 155; Ramswick v. Messerer, 200 Minn. 299, 274 N. W. 179; Lumiansky v. Tessier, 213 Mass. 182, 99 N. E. 1051; 1 Am. Jur., Actions, § 95.

brought against him as a defendant. Rietz, in behalf of Simon as a plaintiff, called two witnesses, Merton Berg and Einar W. Olson, whose sole testimony was given to show that defendant Carroll's reputation for truth was not good. Moonan, as attorney for Simon as defendant, then proceeded to cross-examine these two witnesses. No right of cross-examination existed because the two witnesses were in no sense adverse to Simon as a defendant.[8] It is not to be overlooked, however, that in a joint trial, where a party appears in one action as plaintiff and in another as defendant and a witness has testified for such party as plaintiff, the trial court in the exercise of a cautious discretion may—where no adversity exists as a basis for cross-examination—permit the party's separate defense attorney to adopt such witness for further direct examination when it appears that additional direct testimony is reasonably necessary or appropriate to establish such party's case as a defendant.

Where a party who is both plaintiff and defendant is permitted to appear by two separate sets of attorneys, the trial court in granting the privilege will of course be alert to see that the privilege is not abused or used in an unfair manner. In the instant case no prejudice resulted from the improper cross-examination since the trial court sustained objections to all questions which might have elicited prejudicial answers. Likewise, we find that no prejudice resulted from the attempted continuation of such cross-examination after the court had sustained objections to the questions asked. Error without prejudice is not a ground for reversal.

In response to a query as to the location of certain X rays, a medical witness referred to an insurance company. Upon appellant's request the answer was stricken. In another instance questions were asked as to the presence of an unopened whiskey bottle in Carroll's car. Appellant gave positive and uncontradicted testimony that he had had no intoxicating liquor on the day of the accident. Appellant made no request for special instructions to the jury to disregard the reference to insurance and to the unopened bottle.

---

[8]As to the right of cross-examination by both parties when an adverse party (or his agent, etc.) is called to testify, see Rule 43.02 of the Rules of Civil Procedure; 36 Minn. L. Rev. 676 to 678.

Reasonably no prejudicial error resulted, and the trial court did not abuse its discretion in denying a new trial.

■ As a rebuttal witness defendant Carroll called the Reverend H. E. Higbee to testify as to the former's reputation for truth and veracity. This witness, who had known Carroll for at least four years as a resident of the same community and said that he knew his reputation for truth and veracity, testified that he had never heard such reputation discussed. When over the sustained objection of opposing counsel the witness stated that Carroll's reputation for truth and veracity was "good," the court struck the answer on the ground that no foundation therefor had been established. The court's ruling was correct. It is to be borne in mind that we are not here concerned with reputation evidence to show a person's general bad character[9] but solely with testimony as to the reputation of another witness—in this case one of the litigants—for truth and veracity.[10] Where it is sought to impeach (or rehabilitate by rebuttal) a prior witness by showing his reputation for truth and veracity, testimony of such reputation is admissible only if the person testifying thereto

---

[9]The reputation of a person for general bad character *other than that relating to truth and veracity* may *not* be shown in Minnesota. State v. Kahner, 217 Minn. 574, 15 N. W. (2d) 105; Warner v. Lockerby, 31 Minn. 421, 18 N. W. 145, 821; See, Rudsdill v. Slingerland, 18 Minn. 342 (380); 36 Minn. L. Rev. 730 to 733.

[10]Cases permitting negative evidence of a good reputation *for the sole purpose of providing an evidentiary basis for an inference of good character by the fact finder* are not in point. See, State v. Lee, 22 Minn. 407; Bingham v. Bernard, 36 Minn. 114, 30 N. W. 404; State v. Lockerby, 50 Minn. 363, 52 N. W. 958; State v. Morris, 149 Minn. 41, 182 N. W. 721. Similarly not in point are cases permitting a witness to testify from his own personal knowledge and observation—as distinguished from general repute—as to the peaceable disposition of an accused (see, State v. Lee, *supra*) or as to specific character traits. See, Ladd, *Techniques and Theory of Character Testimony*, 24 Iowa L. Rev. 498, 509 to 513, 527 to 529; Dauer v. Dauer, 169 Minn. 148, 210 N. W. 878; 7 Wigmore, Evidence (3 ed.) §§ 1983 to 1985. As to use of reputation evidence in civil actions where moral turpitude is involved, see Nickolay v. Orr, 142 Minn. 346, 172 N. W. 222, 6 A. L. R. 1048, and cases therein cited; 24 Iowa L. Rev. 498, 503 to 505.

(1) is familiar with the reputation of such witness for truth and veracity in the community[11] of his residence, (2) has stated what the reputation is, and (3) has further given his opinion whether from his knowledge of such reputation he would believe the witness under oath. State v. Palmersten, 210 Minn. 476, 299 N. W. 669. In all cases where an issue has been raised as to the qualifications of a person to testify as to the reputation of another witness for truth and veracity, this court has followed the rule that a foundation must be laid first to show that the person so testifying is familiar with such witness's reputation for truth and veracity *by reason of having heard* the members of the community in which the witness resides discuss the latter's truth and veracity.[12] This is the necessary implication of our holding in State v. Palmersten, *supra*.[13] In the instant case the Reverend Mr. Higbee had heard nothing by way of conversation or discussion as to Carroll's reputation for truth, and therefore his testimony was inadmissible for lack of a proper foundation.

The orders of the trial court are affirmed.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

---

[11]The restrictive rural concept of a *community* must give way to the needs of modern living conditions in a large city or urban area. See, State v. Cavett, 171 Minn. 222, 213 N. W. 920; Hamilton v. State, 129 Fla. 219, 176 So. 89, 112 A. L. R. 1013, with Annotation at 1020; 24 Iowa L. Rev. 498, 513 to 518; 5 Wigmore, Evidence (3 ed.) § 1616.

[12]The above rule for establishing a foundation for testimony as to the truth and veracity of a witness is not to be confused with the more liberal rule apparently preferred or recognized by this court in showing a person's reputation as to general character. Cf. State v. Palmersten, 210 Minn. 476, 299 N. W. 669 (inclusive of concurring opinion), with State v. Barnard, 176 Minn. 349, 223 N. W. 452. For other evidentiary methods for establishing good character, see cases in footnote 10, *supra*.

[13]See, 6 Dunnell, Dig. & Supp. § 10353, and cases there cited; 36 Minn. L. Rev. 730 to 733 (see note 49 for efficient manner in which to establish proper foundation). For excellent article, see Ladd, *Techniques and Theory of Character Testimony*, 24 Iowa L. Rev. 498.