EDWARD A. DAHLING, TRUSTEE OF HEIRS OF RUDOLPH H. DAHLING, v. VERNON DAMMANN AND ANOTHER.

87 N. W. (2d) 25.

December 20, 1957—No. 37,086.

172

*Holst, Erickson, Vogel & Richardson,* for appellant.

*Sullivan, Stringer, Donnelly & Sharood, David R. Roberts,* and *Arthur J. Donnelly,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

After reargument, the opinion of this court dated July 5, 1957, has been withdrawn and the following opinion adopted in lieu thereof.

This is an appeal from an order of the district court granting judgment for defendants notwithstanding the verdict and denying an alternative motion for new trial.

This action was brought by Edward A. Dahling as trustee of the heirs of Rudolph H. Dahling, deceased, to recover damages for the latter's wrongful death.

The action arose out of an intersection collision between a GMC pickup truck owned and driven by plaintiff's decedent and a Chevrolet automobile owned by defendant Vernon Dammann and driven by his 16-year-old son, defendant Wayne Dammann. The sole occupant of each car at the time of the collision was the driver. Rudolph H. Dahling

died at the scene of the collision without telling anything to anyone concerning the accident. The defendant driver of the Chevrolet car was rendered unconscious by the collision and has never been able to recall anything about the occurrence or about what happened immediately prior to or after the collision. No other person observed the accident so there was no eyewitness testimony by anyone as to the manner of driving of either car at the intersection, as to who entered the intersection first, or as to whether either one slowed up or stopped in entering the intersection.

The collision occurred about dark, at approximately 5:45 p.m. on November 11, 1955, at the intersection of Goodhue County Highway No. 9, which is an arterial highway, and a township road. Highway No. 9 runs in an easterly-westerly direction, and at the intersection in question it is a through-stop highway, marked with stop signs some distance back from it at the entrance to it from the township road which runs in a northerly-southerly direction and is not a through-stop highway. Highway No. 9, about 28 feet wide, was oiled at the point in question and was quite hard from the oil treatment, while the township road, 22 feet in width, had a graveled surface. Skid marks showed that the impact took place at a point about nine feet north of the south line of Highway No. 9. There was a row of pine trees at the northwest corner of the intersection which obstructed the view of drivers approaching the intersection from the north and from the west. There were some dips in Highway No. 9 west of the intersection, and there was a 7-percent grade on the township road approaching the intersection from the north.

Although defendant Wayne can remember nothing about the collision, it is admitted that he was driving his car easterly along Highway No. 9 where it intersects with the township road when the collision occurred.

The Alfred Holst farm was located at the northwest corner of the intersection. One of the buildings on the farm was a henhouse which faced east. There was testimony that as the wife and son of Mr. Holst came out of the henhouse they saw decedent's truck approaching the intersection from the north with its lights on. Melroy, the son, said that they saw the truck at a point 266 feet from the center of the

intersection where the collision took place. He said that they had left the henhouse and had walked about 150 feet when they heard the crash from the collision. This testimony was corroborated by his mother. He later retraced his steps and testified that from 35 to 40 seconds elapsed in walking from the place where they saw the decedent approaching in his truck to the point they had reached when they heard the collision. The record is barren as to whether Melroy retraced his steps at the same speed as he and his mother walked the evening of the accident, since there is no statement as to the speed they walked that evening. While it is true that there is no testimony in connection with the speed of walking, it is reasonable to assume that on a retracing of his steps Melroy would have walked at approximately the same pace as he had walked on the former occasion. It is common knowledge that the walking pace of an individual, unless there is some reason for him to do otherwise — and none appears here — usually follows a fairly well-established gait. If we accept this testimony that it took decedent 35 to 40 seconds to cover a distance of 266 feet with his truck, it could permit an inference that decedent stopped at the stop sign or that he traveled the entire distance very slowly. Either inference would seem to have him entering the intersection at a relatively slow rate of speed. On oral argument plaintiff's counsel took the position that decedent must have stopped at the stop sign or he would have been across the intersection at the rate he was driving before the collision.

Alfred Holst and his son Melroy were the first persons at the scene after the collision. They found that defendants' automobile had come to rest in a soft, plowed field at a distance of about 66 feet southeasterly from the beginning of a skid mark in the southeast portion of the intersection. Decedent's truck was found facing easterly and tipped over on its right side on the southerly edge of Highway No. 9, about 66 to 70 feet easterly from the beginning of a skid mark in the southeasterly portion of the intersection. It was roughly at a right angle from the point of impact. The Holst testimony with reference to distances and the locations of the vehicles subsequent to the accident was substantially the same as that of Mr. Avery, a deputy sheriff who made measurements after the accident. The skid marks with reference to both

vehicles were made after the impact. There were no discernible skid marks indicating that either driver had attempted to swerve or put on the brakes prior to the accident.

The left front side of defendants' car was damaged, the front end was smashed in about 1½ feet, the frame was badly bent, and the rear springs were bent or sprung back about 1½ inches. The 6-inch channel iron frame of decedent's truck was pushed in about 2½ feet in the center of the right side near the cab, and it was pushed in about 1½ feet near the front of the right side; the transmission was broken; and imprints of the Chevrolet's headlights were visible on the right side of the truck and there was an imprint of a tire over the left door of the car. Defendants contend that the injury and damage to the cars indicated a collision between the left front wheel and fender of defendants' car and the right front wheel and fender of decedent's truck. It would seem from the record and exhibits however that the front end of defendants' car struck the right front side of the truck almost broadside, since there was testimony that, judging from the damages to the vehicles, the collision was a right-angle collision. This does not mean, however, that the truck was moving at right angles all the way until it came to a stop after the impact, as it rolled over part of the way.

In a special verdict the jury found Wayne Dammann negligent in the operation of the automobile owned by his father and driven with the consent of the latter and that such negligence was the proximate cause of the collision. It also found decedent negligent in the operation of his truck but that the latter's negligence was not a proximate cause of the collision. It assessed damages in favor of plaintiff for $10,500. Thereafter, defendants moved for judgment notwithstanding the verdict or for a new trial, and the court ordered judgment for defendants notwithstanding the verdict. It is from that order that this appeal was taken.

The basis of the decision of the trial court on defendants' motion, according to the memorandum made a part of the order, is in effect that there was no evidence to substantiate a claim that defendant Wayne Dammann was negligent.

Plaintiff's only assignment of error on appeal is that the trial court erred in ordering judgment for defendants notwithstanding the verdict.

Plaintiff states that the trial court's order for judgment notwithstanding the verdict was based on the ground that the evidence as to the accident was entirely circumstantial and not sufficient to justify submitting the question of Wayne Dammann's negligence to the jury. In arguing that the court erred in its order, plaintiff contends that it is not the law that circumstantial evidence must be proved to a point of demonstration, citing Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771.

In that case we said that evidence of the battered condition of an automobile involved in a collision, as well as evidence of the distance the vehicle was moved by the impact and evidence of the throwing of passengers out of the car, was admissible as indicative of the speed of the offending vehicle. We also held there that, in so far as personal injuries sustained by the victim of an automobile collision reasonably tended to disclose the force of impact as a basis for an inference of the rate of speed of the car involved, evidence thereof is admissible in such manner and to such an extent as the trial court shall determine in the exercise of sound judgment. We overruled Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142, which held that, under the circumstances in that case, it was prejudicial error to admit evidence detailing the extent of the injuries to the occupants of one of the colliding cars as a factor for the determination of speed.

In our opinion, the speed of the Dammann car was an important factor in the instant case. With that in mind, we have examined the record to determine what the jury could have considered when it found in its special verdict that Wayne Dammann was negligent and that his negligence was the proximate cause of the collision.

The record shows that there were no swerve marks or brake marks in connection with the car Wayne was driving to indicate that he tried to avoid decedent's truck. While that is also true with reference to decedent's truck, the jury could have determined that Wayne should have been looking straight ahead and that, if he had been doing so, he would have seen decedent's truck. There was evidence that the truck lights were on, which should have made it easier for Wayne to have seen decedent if he had been keeping a proper lookout. The record also shows that decedent's truck was knocked 66 to 70 feet to the east

at almost a right angle from the way he was traveling for at least part of the way as it rolled part of the way. This could have been an indication to the jury that the truck was hit hard, which is substantiated by the evidence that the transmission was broken; that the 6-inch channel iron frame on the right side of the truck was bent to the left at the center of the truck about 2½ feet and at the front end about 1½ feet; and that it would have taken 15 tons' pressure to straighten out the frame.

The records and exhibits further showed that the front of defendants' car was shoved in about 1½ feet; that the frame and rear springs were bent; that the headlights were imprinted on plaintiff's truck; that the spare tire on the truck was imprinted on defendants' car, indicating a sideswipe after impact; and that the front bumper, fenders, and headlights of the car were completely smashed and twisted, indicating a broadside impact with the truck, diverting it from its course immediately after the impact at almost a right angle. The overall damages to both vehicles, their respective positions after the collision, and the lack of skid or swerve marks prior to the impact could all have indicated to the jury that Wayne was traveling at such a high rate of speed under the circumstances as to justify a verdict against him. Also, a jury could have determined from damages to each of the vehicles involved; from their positions after the collision; and from other circumstances that Wayne either was driving too fast under the circumstances here or that he was driving over the legal limits of speed.

M. S. A. 169.14, subd. 2, provides that, where no special hazard exists, the speed limit in the locality where Wayne was driving was 60 miles per hour during the daytime and 50 miles per hour during the nighttime and that any speed in excess of those limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful. Daytime, under the statute, means from half an hour before sunrise to half an hour after sunset, and nighttime means at any other hour with the exception *at any time* when due to weather or other conditions there is not sufficient light to render clearly discernible persons and vehicles at a distance of 500 feet. There is evidence here that it was dark at the time of the collision.

While the statutory limits for daytime and nighttime driving are

set out above, there could be situations where a jury might determine that even that rate of speed was too high under the circumstances. It is our opinion that the jury here might have determined that, whether Wayne was driving 50 or 60 miles an hour or even less, his speed was too fast and that as a result he was negligent and his negligence was the proximate cause of the accident.

In Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327, involving a different fact situation, we rejected the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances. It therefore appears to us, after taking into consideration all the surrounding circumstances, that it was a jury question as to the negligence of defendant driver.

This court held in Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320, subject to certain provisions, that a person driving on a through highway at 60 miles per hour in the daytime need not reduce his speed while approaching and passing over intersections along the through highway protected by stop signs where no special hazard exists other than an automobile approaching the intersection or stopped at it in obedience to a stop sign. That case differs from the case at bar in that the only testimony there as to speed was that plaintiff driver was not traveling over 60 miles an hour, the legal limit at the time and place involved. Here, there is no evidence on behalf of Wayne as to the speed of his car except the extent and nature of the damages to the vehicles involved, their positions after the collision, and the extent and nature of the personal injuries.

We did say, however, in the Schleuder case, in regard to the right of the jury to draw inferences with reference to excessive speed (239 Minn. 461, 59 N. W. [2d] 325):

"* * * The inferences to be drawn from the evidence — the gyrations of the automobile in the accident, the distance plaintiff's automobile traveled after the accident, and the place where plaintiff was found — would have justified the jury in finding, if it so desired, that the plaintiff was traveling at an excessive rate of speed."

Viewing the jury verdict in the light most favorable to plaintiff in the instant case, as we are compelled to do, we are of the opinion that

the evidence was not so clearly against the verdict as to justify the order of the trial court setting it aside and granting judgment notwithstanding the verdict. Rather, it appears to us that there was evidence from which a jury could find defendant Wayne negligent and that his negligence was the proximate cause of the accident. Here, the front end of defendants' car was smashed in about 1½ feet, the frame was badly bent, the left front side of the car was damaged, and the rear springs were bent or sprung about 1½ inches. Also, the 6-inch channel iron frame of decedent's truck was pushed in about 2½ feet in the center of the right side near the cab and was pushed in about 1½ feet near the front of the right side, with evidence that it would have taken 15 tons' pressure to straighten out the frame; the transmission was broken; and imprints of the headlights from defendants' car were visible on the right side of the truck. All of this, coupled with other physical facts brought out in the evidence and the exhibits, could have satisfied the jury that defendants' car was moving at a higher rate of speed than permissible under the circumstances.

Defendants contend that the trial court properly granted judgment notwithstanding the verdict inasmuch as there was no eyewitness or other evidence indicating a case of negligence against defendant Wayne sufficient to go to the jury and that there was no evidence to permit a jury to do more than speculate on the question of proximate cause. Defendants cited, among other cases, Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611, in which this court said that civil damages may be recovered where the proof is circumstantial if the evidence meets the quantum of proof but that mere proof of the happening of an accident or that death or injury was the result of the act of another without proof of negligence or its causal relation to the result complained of was not sufficient. We held there that negligence may be proved by circumstantial evidence but that the evidence sustaining the hypothesis contended for must preponderate against any other hypothesis.

The fact situation in the Hagsten case is considerably different from the one at bar. That was an appeal from an order of the trial court denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial. Action was brought by the plaintiff as special administratrix of the estate of her 5-year-old son against de-

fendant driver of a truck. The latter drove his employer's truck home to lunch on the day in question. He parked the truck in front of his home, entered his residence, and started his lunch. Shortly afterward police officers called at the driver's home and accused him of running over the boy. Defendant denied having run over anyone and always maintained that he had no knowledge of having hit or run over the child. An examination of the truck was made by the police officers, but they failed to find anything on the truck which would indicate that it had struck the boy. There were no eyewitnesses to the accident. Neither the witness who followed the truck and first discovered the boy's body on the street nor another witness who stood near the side of the street saw what happened. It was the contention of defendant that there was no evidence which would justify a finding of negligence which would be the proximate cause of the child's death. We concluded that under the evidence in that case all that the jury would be warranted in finding was that the boy's death resulted from being hit or run over by defendant's truck and that how the accident happened or whether it was caused by any negligence of defendant was left completely in the realm of conjecture and speculation. For that reason, we said in that case that a verdict based on such a complete lack of evidence establishing essential facts could not be permitted to stand. The decision of the trial court was reversed with instructions to enter judgment for defendant.

Defendants argue that more than the law of speed is applicable in the instant case in that the jury also found that decedent was negligent but that his negligence was not the proximate cause of the accident. Defendants contend that the law of arterial through-stop highways is applicable and that decedent had three affirmative duties, namely (a) to stop; (b) to stop at a place where he could observe; and (c) to observe carefully as he started into the intersection.

In Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822, we said that, if in the light of the entire evidence reasonable men can differ as to whether there is a causal connection between plaintiff's negligent act and the happening of the collision, the question of proximate cause is for the jury.

Causation is a fact issue and for the determination of a jury except when facts are undisputed and susceptible of but one inference. Fer-

guson v. Kehoe, 245 Minn. 46, 71 N. W. (2d) 168, and cases cited.

It appears to us, viewing the evidence in the light most favorable to the verdict, that the jury could reasonably find that decedent was negligent here but that his negligence was not the proximate cause of the accident on the ground that defendant Wayne's negligence was an intervening and superseding cause.

The jury heard the testimony of Mrs. Holst and her son to the effect that from 35 to 40 seconds elapsed from the time they first saw decedent's truck at a point 266 feet from the center of the intersection until they heard the crash resulting from the collision. Based upon this evidence, the jury could reasonably find that decedent was driving at a slow speed and that his truck was at no time traveling more than about 4½ to 5 miles per hour. The jury could also find that decedent was negligent in not having stopped at the proper place before entering the intersection but that in view of his apparent slow speed he was entering the intersection when there was no imminent or immediate hazard in sight and that the hazard of defendant's approaching car did not become apparent to Dahling until he was already in the intersection. The apparent slow speed of decedent's truck and the evidence that its lights were on could also have permitted the jury to find that defendant Wayne could have seen Dahling in a position of peril in the intersection for a sufficient time for him to have taken corrective action to avoid the accident by either reducing his speed or turning to avoid the collision. In other words, the jury could find that Wayne, after he saw or should have seen the truck already in the intersection, failed to bring his vehicle under proper control and that his negligence in that respect caused the accident. Under the circumstances the jury could conclude that the negligence of decedent was superseded by that of the defendant and that because of the latter's failure to keep his car under control by reducing the speed or steering it properly no time was left for decedent to take corrective action.

In Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822, both plaintiff and defendant were negligent in that each of them drove down the center of the road without regard to the center line. In that case we held that the jury could reasonably find that defendant's excessive speed was the sole proximate cause of the accident and that plaintiff,

although he violated the statute by failing to keep to the right of the center line, was not guilty of contributory negligence as a matter of law. In that case, plaintiff testified that defendant came so suddenly and with such high speed over the hilltop that plaintiff had no time to turn to the right from his middle-of-the-road position of danger. The jury apparently found, and we held that it reasonably could do so, that, if the defendant had been driving at a reasonable rate of speed, plaintiff would have been able to turn to the right from his negligent, though customary, course of travel and that the accident then would not have happened.

It is our opinion here that there was evidence to justify a jury finding that defendant driver was negligent and that his negligence was the proximate cause of the collision.

Reversed with instructions to enter judgment for plaintiff.

KNUTSON, JUSTICE (concurring).

I concur in the result.

DELL, CHIEF JUSTICE (concurring specially).

I concur in the result. The only substantial issue in this case, as I see it, is whether the defendant Wayne Dammann was driving at an excessive rate of speed. As I view the evidence, no special hazards existed at the intersection where the collision occurred other than the presence of the decedent Dahling's truck which the jury had a right to find was approaching the intersection slowly. In this situation, under the facts of this case, defendant driver, being on the through highway which was protected by stop signs, was entitled to drive his automobile at a speed of 50 miles an hour at the time that the accident occurred pursuant to M. S. A. 169.14, subd. 2(3), without being subjected to a charge of negligence. Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

However, from the great force and magnitude of the collision, the location of the vehicles after the accident, and the other circumstances and evidence pointed out in the majority opinion, the jury, in my judgment, was justified in finding that Dammann was driving in excess of 50 miles an hour and that, therefore, whether he was negligent, and if so, whether his negligence was the proximate cause of the collision,

were issues to be resolved by the jury. Certainly we should not hold, on a set of facts such as we have here, that a claim of negligence based upon excessive speed cannot be established because of a lack of eyewitnesses.