**EMERY AIR FREIGHT CORPORATION, et al.,**
Respondents,

v.

**LOCAL 544, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Appellants.**

No. C5–85–644.

Court of Appeals of Minnesota.

Dec. 10, 1985.

Review Denied Feb. 14, 1986.

Robert S. Burk, Minneapolis, for respondents.

Roger A. Jensen, St. Paul, for appellants.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a judgment awarding respondent Ettinger damages as a result of appellant Teamsters Local 544's contempt of an April 11, 1983 temporary restraining order. We affirm in part, reverse in part and remand.

## FACTS

Respondent M.W. Ettinger Transfer and Leasing Corporation (Ettinger) was scheduled to begin work on April 11, 1983 as the local delivery and pick-up contractor for Emery Air Freight, a national delivery service. Before April 11th Emery's local business was handled by LaSalle Cartage Company, Inc. (LaSalle) who serviced Emery's account for nearly fifteen years. LaSalle had a collective bargaining agreement with appellant Teamsters Union Local 544 (Union). Ettinger employees are not represented by the Teamsters union.

On April 10, 1983, union officials met with their members to organize the union's action the next day against Emery and Ettinger at Emery's delivery facility. The union membership decided to place pickets and demonstrators at each of the entrances to the Emery terminal.

The next morning, Ettinger's drivers chose not to cross the picket lines blockading the entrance to Emery's facility because of threats by union members. A temporary restraining order issued that afternoon April 11, pursuant to Emery's request enjoining the union and its officers from threatening or harassing any employee of Emery, obstructing any person from entering the air cargo facility and interfering with any vehicle attempting to enter or exit the facility.

On April 12, members of the union prevented Ettinger and its employees from entering Emery's facility by blocking access to the street and threatening employees.

On April 13, 1983, an amended temporary restraining order was issued by the court enjoining the union from interfering with any vehicle or obstructing any person attempting to gain access to not only Emery's facility but also access to the 40 terminals occupied by other aircargo services located in the immediate vicinity known as Air Cargo City. At the same time, pursuant to a motion by Emery, the court issued an order requiring the union and several of its members to show cause why they should not be held in contempt for violating the original temporary restraining order.

When Emery initiated its own action, Ettinger moved to intervene, even though it had originally filed a separate action against the union on April 11th seeking injunctive relief. The court allowed intervention on June 2, 1983 and consolidated Ettinger's original action with Emery's.

The contempt of court trial was held in July 1983 on the issue of constructive civil contempt, and the damages issue was held in January 1984.

The trial court found the union in constructive civil contempt because it had engaged in unfair labor practices after issuance of the April 11th temporary restraining order. The court also ruled that Ettinger was limited to only those claims for damages occurring after its intervention on June 2, 1983.

Damages of $12,513.86 were awarded to Ettinger for the cost of security and guard expenses incurred by Ettinger from June 2 through the end of July 1983 ($7,446.86), the cost of repair of a Ettinger truck tire punctured on June 30, 1983 ($10.00), medical expenses incurred by an Ettinger employee when he stepped on a four-prong spike on June 29, 1983 ($57.00), and Ettinger's attorney's fees between June 2 and July 31, 1983 ($5,000.00).

## ISSUES

1. Did the trial court apply the proper standard of proof in its determination of whether the union acted in contempt of the April 11, 1983 temporary restraining order?

2. Did the trial court err in its determination that the union acted in contempt of the April 11, 1983 temporary restraining order?

3. Did the trial court err in its determination that Ettinger sustained damages as a result of the union's contempt after Ettinger's June 2, 1983 intervention?

4. Did the trial court correctly regard this matter as a civil rather than criminal contempt proceeding?

## ANALYSIS

1. The union asserts that it cannot be held in contempt for the acts of its members occurring after Ettinger's intervention absent a showing of "clear proof", the standard set forth in Minn.Stat. § 185.12 (1982) (Minnesota Little Norris—LeGuardia Act). Minn.Stat. § 185.12 provides that:

No officer or member of any association or organization, and no association or organization, participating or interested in a labor dispute, shall be held responsible or liable in any court of this state

for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or a ratification of such acts after actual knowledge thereof.

Minn.Stat. § 185.12 (1982).

The trial court determined the "clear proof" standard did not apply because Minn.Stat. § 179.14 excludes the applicability of the Minnesota Little Norris—LaGuardia Act to actions brought under Minn.Stat. § 179.11. It stated:

This is a proceeding to enjoin employee unfair labor practices under Minn.Stat. § 179.11, and therefore the provisions of Section 179.14 removing the "clear proof" standard of Section 185.12 are controlling. The standard of proof in this matter, therefore, is preponderance as is true in all other civil litigation.

The union claims that Ettinger intervened to claim money damages under Minn.Stat. § 588.11 if the union was found in contempt and therefore the clear proof standard required by Minn.Stat. § 185.12 should apply.

■ The claim has no solid legal basis. Ettinger's claim for damages under Minn. Stat. § 588.11 arises directly from the temporary restraining order holding the union unlawfully engaged in unfair labor practices under Minn.Stat. § 179.11. Emery's contempt motion, joined by Ettinger, was in direct response to violations of the temporary restraining order, and therefore violations of Minn.Stat. § 179.11.

Federal courts which have addressed the relationship between the standard of proof used in seeking injunctive relief and that used in a contempt action to assure compliance with the injunction have held that provisions of the Norris—LaGuardia Act requiring clear proof do not apply to contempt proceedings brought under the unfair labor practice statutes contained in the Labor Management Relations Act. *See, e.g., Oil, Chemical and Atomic Workers International Union, AFL–CIO v. N.L. R.B.*, 547 F.2d 575 (D.C.Cir.1976), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). *Squillacote v. Local 248, Meat and Allied Food Workers,* 534 F.2d 735 (7th Cir.1976). The *Squillacote* court reasoned:

The contempt action in this case arises out of an injunction entered under provisions of the Labor Management Relations Act. The power to coerce by contempt is concomitant to the power to enter an injunction and so the same standards must be applied. To hold otherwise would place the district court in the intolerable position of being able to enter an injunction against a union if it found it responsible for unfair practices under ordinary standards of agency law but being unable to enforce the injunction through contempt unless the union became responsible under the higher Norris-Laguardia Act standard.

534 F.2d at 747.

2, 3. The union next argues that Ettinger's failure to produce any evidence of violations occurring after the June 2 intervention makes findings of contempt and damages clearly erroneous.

■ The fact findings of a trial court must be upheld unless those findings are clearly erroneous. Minn.R.Civ.P. 52.01. A reviewing court may not set aside the trial court's findings unless it is left with the definite and firm conviction that a mistake has been made. *In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

The record is replete with violations occurring the first two days after issuance of the restraining order of April 11, including acts of violence against truck drivers attempting to enter the air cargo facilities and concerted efforts by union members to blockade the entrances to the terminals. After the amended restraining order was issued on April 13th, the organized demonstrations at the entrance to Emery's facility tapered off and isolated incidents of threats and violence to Ettinger's drivers and trucks continued elsewhere for at least two months.

The union incorrectly characterizes Ettinger's intervention as establishing a new time period for a second finding of contempt. The June 2, 1983 date was significant only for a determination of damages which Ettinger could recover if a causal relationship was shown between the union's finding of contempt and the expenses Ettinger incurred after the intervention as a result.

With regard to damages the trial court's findings are not clearly erroneous. At the hearing in January 1984 the retail manager of Ettinger testified to two incidents occurring at the airport facility after June 2. Both incidents were similar in nature to those encountered by Ettinger before its intervention. In one, a driver was injured when he stepped on a four-pronged spike while walking to his car; in the other, a tire on an Ettinger truck was spiked, necessitating repair.

Evidence was introduced of expenses incurred to hire security guards from April 11th through the end of July in order to protect Ettinger's trucks and drivers as a result of the union's contempt of the restraining order.

Finally, Ettinger submitted an affidavit to the court showing reasonable attorneys' fees incurred after June 2, 1983 for intervention and prosecution of the contempt action and the subsequent damages trial as a result of the union's failure to comply with the April 11th TRO.

█ Ettinger based its claim for damages on Minn.Stat. § 588.11, which provides in pertinent part:

> If any actual loss or injury to *a party* in an action or special proceeding, prejudicial to his right therein, is caused by such contempt, the court or officer, in addition to the fine or imprisonment imposed therefor, may order the person guilty of the contempt to pay the party aggrieved a sum of money sufficient to indemnify him and satisfy his costs and expenses * * *.

Minn.Stat. § 588.11 (1982) (emphasis supplied). Although Ettinger didn't intervene in the Emery action until June 2, 1983, its status as a party relates back to the commencement of its April 11th lawsuit. *See Simon v. Carroll,* 241 Minn. 211, 62 N.W.2d 822 (1954). It never dismissed that action which was later consolidated with Emery's action. Therefore, its claim for damages can include incidents occurring after April 11, and is not confined to the period following June 2.

4. The union argues that the trial court incorrectly regarded this action as a civil rather than criminal contempt proceeding.

Criminal and civil contempt are distinguishable. Civil contempt is available solely to aid in the enforcement of the injured party's rights against further violations by the contemner of a particular court order involved. Criminal contempt, on the other hand, is a proceeding instituted by the state to maintain and vindicate the authority of the court. Its purpose is solely to punish a contemner for past misconduct which when the proceeding is commenced no longer continues. *See Peterson v. Peterson,* 278 Minn. 275, 276 n. 1, 153 N.W.2d 825, 826 n. 1 (1967).

█ The union maintains that since all of Ettinger's allegations dealt with past rather than continued misconduct, this matter should have been brought by the county attorney as criminal contempt. The record indicates, however, that in July, 1983 when the contempt trial was held incidents involving damage to Ettinger trucks continued. In fact, Gerald Ruikka, Ettinger's retail manager, testified at the time of the damages hearing in January 1984, that vandalism still occurred.

## DECISION

The trial court properly applied the civil preponderance rather than clear proof standard in its determination of whether the union acted in contempt of the April 11, 1983 temporary restraining order. The trial court's findings of contempt of the April 11, 1983 temporary restraining order by the union and damages incurred by Ettinger as a result were not clearly erroneous. The trial court erred in limiting Ettinger's

claim for damages to those incurred after its June 2, 1983 intervention. We remand for a determination of damages, and reasonable attorney's fees incurred by Ettinger between April 11 and the date of its intervention.

Affirmed in part, reversed in part, and remanded.