**CLARK et al. v. McNEILL.**

Circuit Court of Appeals, Sixth Circuit. April 4, 1928.

No. 4948.

1. Trial ⬅139(1)—Verdict should not be directed for defendants where any substantial evidence supports plaintiff's recovery on either of alternative theories.

Where plaintiff sought recovery on two alternative theories, defendants held, not entitled to direction of verdict, where there was any substantial evidence reasonably tending to support recovery on either of such theories.

2. Appeal and error ⬅927(7)—In reviewing directed verdict for defendant, evidence is considered in light most favorable to plaintiff.

In determining propriety of directed verdict for defendant, reviewing court must take that view of proof most favorable to plaintiff.

3. Brokers ⬅38(5)—Gaming ⬅50(1)—Action against brokers to recover margins held for jury on theories that transaction was wager and that defendants contracted to carry plaintiff's intestate as long as he had certain credit margin.

In action against brokers to recover margins posted by plaintiff's intestate in transaction for sale of cotton, evidence held, sufficient to take plaintiff's case to jury, both on theory that transaction was mere wager, and on theory that defendants had contracted to carry plaintiff's intestate so long as he had certain credit margin.

4. Appeal and error ⬅837(11)—Hearsay testimony, not objected to, is properly before reviewing court.

Where testimony which was hearsay in part was not objected to at trial, it is properly before reviewing court in determining whether direction of verdict was proper.

5. Gaming ⬅50(3)—In action against brokers to recover margins posted, verdict based on violation of margin agreement held not necessarily rejection of plaintiff's wagering theory.

Where action against brokers to recover margins posted by plaintiff's intestate was brought on alternative theories that transaction was mere wager and that defendants had contracted to carry intestate so long as he had certain net credit margin of 50 points, verdict based on violation of 50-point margin agreement held, not necessarily rejection of wagering theory, although not an acceptance.

6. Witnesses ⬅175(3)—In action against brokers to recover margin posted by plaintiff's intestate, defendant held not competent to deny conversation with deceased, where plaintiff's witness as to such conversation was not deceased's "agent" (Civ. Code Prac. Ky. § 606, subd. 2, par. [d]).

In action against brokers to recover margins posted by plaintiff's intestate, testimony by defendant that alleged conversation between him and plaintiff's intestate did, not take place held, properly excluded, on ground that witness was interested in suit as opposite party within Civ. Code Prac. Ky. § 606, subd. 2; plaintiff's testimony as to such conversation being intro-

duced by intestate's attorney, who was not "agent" within paragraph (d), especially where he testified he was not acting as attorney at time of conversation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Agent.]

**7. Appeal and error ⟨⟩499(3)—Incompetency of evidence will not be reviewed where record did not show such objection was made.**

Where record does not indicate that objection was made that certain evidence was incompetent, question will not be reviewed.

**8. Appeal and error ⟨⟩1001(1)—Reviewing court cannot consider whether substantial evidence of agency was sufficient to establish it; that being jury's province.**

Where there was substantial evidence to establish agency, reviewing court cannot consider whether it was sufficient to establish such agency, since weight of evidence and credibility of witnesses is for jury.

In Error to the District Court of the United States for the Western District of Kentucky; Charles I. Dawson, Judge.

Action by Hattie McNeill, administratrix of Jesse McNeill, against Russell Clark and others, copartners as John F. Clark & Co. Judgment for plaintiff, and defendants bring error. Affirmed.

W. J. Webb, of Mayfield, Ky., for plaintiffs in error.

Bunk Gardner, of Mayfield, Ky. (J. W. McDonald, of Mayfield, Ky., on the brief), for defendant in error.

Before DENISON and KNAPPEN, Circuit Judges, and ANDERSON, District Judge.

KNAPPEN, Circuit Judge. During May, 1924, Jesse McNeill, a farmer and lawyer, living near Hickman, Ky., gave to defendants, who were brokers having their principal office at New Orleans, La., orders to sell on the New Orleans Cotton Exchange, for October delivery, an aggregate of 800 bales of cotton, depositing with defendants from time to time margins totaling $7,500, including $4,000 deposited May 24 and 26, 1924. On May 31st defendants called on McNeill for $2,500 additional margin, which he declined to pay, for the reason hereinafter stated, and defendants "took him out of the market," by purchasing 800 bales for October delivery, charging the loss against plaintiff's margin, which left to his credit on their books—after taking into account certain charges for services and revenue taxes—a balance of $3,317.-02, which was later paid to McNeill on his draft therefor.

In this suit McNeill sought recovery on two alternative theories: First, that it was understood by both parties that there was in fact to be no delivery of cotton, but that the transaction was a mere wager, by which the loser should pay to the winner the difference between the contract price of the cotton and the market price at the time the transaction should be closed. On this theory of wager contract, McNeill's recovery would be the difference between $7,500 deposited by him with defendants as margin and the $3,317.02 returned to him if he was closed out, viz. $4,182.98.

The other theory of asserted liability is that defendants had contracted with McNeill to carry him (not close him out) so long as he had a net credit margin of 50 points, and that, when taken out of the market, he had a net credit thereon of more than 81 points. On this theory, McNeill's recovery would be the difference between the contract price and the market price on the day defendants took him out of the market, in spite of his contention of a 50-point contract limitation, viz. $3,930.22.

McNeill died before the trial, and the suit was revived in the name of his widow as administratrix. On trial to a jury, plaintiff recovered verdict for the last-named sum, and judgment was entered thereon, which this writ is brought to review. The errors assigned relate to the refusal of the court to direct verdict for defendants, to the exclusion of an item of testimony offered by defendants, and the admission of certain testimony for the plaintiff.

1. At the conclusion of plaintiff's testimony, the defendants requested direction of verdict in their favor for lack of evidence to sustain the cause of action, and at the conclusion of all the testimony "defendants again renewed their motion in writing to direct a verdict in its favor."

[1-3] Defendants were not entitled to such direction if there was any substantial evidence reasonably tending to support the recovery by plaintiff *on either of the two theories* already stated. We are disposed to think there was such testimony as to each theory. In determining this question, we must take that view of the proof most favorable to the plaintiff. Worthington v. Elmer (C. C. A. 6) 207 F. 306–309, and cases cited; Crucible Steel Forge Co. v. Moir (C. C. A. 6) 219 F. 151, 153. While one of the defendants testified that it was the intention of defendants that actual delivery of the cotton under the contracts bought and sold for future delivery was to be made, and although the printed form of confirmation of orders sent plaintiff by defendants contained

the statement that "all orders for the purchase and sale of any commodity are received and executed with the distinct understanding that the actual delivery is contemplated, and that the party giving the orders so understands and agrees," as also that the transaction was "subject in all respects to the by-laws and rules of the exchange where executed and the United States Cotton Futures Act, § 5 (26 USCA § 735; Comp. St. § 6309e)," it is noticeable that neither this witness nor any other seems to have said that in defendants' business any cotton was ever delivered to or by the customer. Cf. Hyman v. Hay (C. C. A. 5) 277 F. 898; also Dunlap v. Perry, 191 Ky. 290, 230 S. W. 291.

[4] Jesse McNeill seems never to have signed and returned to defendants the forms of acknowledgment of confirmation referred to. His brother, who seems to have had a fair acquaintance with the course of business at the office of defendants' correspondent at Hickman, where the orders here in question were taken, testified that this office "was all the time trying to get people to give John F. Clark & Co. their business. They bought and sold cotton on future delivery and required a margin. * * * He [presumably Jesse McNeill] dealt with them, and in the course of business men and women came there to deal with John F. Clark & Co., and they were buying cotton on the margin; no cotton was delivered. Men, women, and children and babies dealt in cotton over there and in all transactions that they had there was not an actual delivery of any commodity." While this testimony may have been hearsay in part at least, it was not objected to, and is thus properly before us. Schlemmer v. Railway Co., 205 U. S. 1, 9, 27 S. Ct. 407, 51 L. Ed. 681.

[5] While the jury's verdict was based upon the violation of the 50-point margin agreement,[1] it was not necessarily a rejection (though it was not an acceptance) of the wagering theory. The two theories, while alternative, were not inconsistent, but recovery was naturally limited to one theory. Indeed, recovery on both theories would be practically a double recovery, and not permissible.

But, wholly apart from this consideration, the motion to direct verdict was properly denied, if there was substantial evidence tending to support the alleged 50-point margin agreement. There was such evidence. Two witnesses (D. L. McNeill, a brother of Jesse McNeill, and Goalder Johnson) testified to being present during a conversation between Jesse McNeill and defendant Marks in the Hickman office, at which conversation Marks admitted that there was an agreement between the defendants and Jesse McNeill that the former would not close out the latter unless his margins got below $2.50 per bale.

Unless by the motion for directed verdict (the form of which motion is given above), defendants do not seem to have raised on the trial any question of lack of evidence to support the alleged 50-point margin limitation. We find no request for instruction to that effect, nor any exception in this regard to the charge, which expressly submitted to the jury that theory of recovery. The defendants' motion for directed verdict was properly overruled.

[6] 2. To meet the testimony of the two witnesses referred to in the preceding paragraph of this opinion, defendant Marks was produced and offer made to show by him that the alleged conversation between him and Jesse McNeill did not take place. The offered testimony was rejected for the reason that Jesse McNeill was dead and the proffered witness was interested in the suit as an opposite party. Section 606(2) of the Kentucky Codes (Civ. Code Prac.), so far as pertinent to the specific question presented here, provides that "No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by * * * one who, is * * * dead when the testimony is offered to be given * * * unless * * * d * * * an agent of the decedent * * * with reference to such act or transaction, shall have testified against such person, with reference thereto, or be living when such person offers to testify, with reference thereto."

The proffered testimony was properly rejected unless plaintiff's witness McNeill was an agent of the decedent within the meaning of subsection (d). Defendants' contention in this regard is based on this testimony of D. L. McNeill upon cross-examination: "I am one of his [Jesse McNeill's] attorneys, and was in on all of his transactions. My brother and I were in close business relations, and I carried Sims out to see him. All statements and transactions between my brother and Marks or Sims were in my presence. I was present as attorney for my brother." On redirect examination, witness

---

[1] The jury was expressly instructed to render verdict for $3,930.22 if they found that defendants agreed to carry plaintiff and not close him out so long as he had on deposit a 50-point margin. The instruction was equally explicit that, in case the transaction was found to be one of wagering, the verdict should be $4,182.98.

said: "I was not representing my brother at that time as attorney."

It seems clear that these statements do not necessarily mean that the witness was the agent of the decedent in the transaction here in question. Not only did the witness McNeill testify that he was not representing his brother at that time as attorney, but the holding that an attorney is not, merely because of that relation, incompetent as a witness for his client as to a transaction with one who is dead when the testimony is offered (unless the attorney's fee is wholly contingent upon the establishment of his client's claim—a feature not appearing here),[2] seems by analogy to forbid treating the word "agent," in subsection (d), as including one who is merely the attorney. Had defendants intended, when McNeill testified, to construe his relation as that of the decedent's agent, further elaboration would have been naturally and reasonably called for. The court was not asked so to construe it. The charge (nowhere excepted to on that branch of the case) made no reference to the construction now contended for by defendants. We think the expression "in on all of his transactions" by no means tantamount to an assertion that the witness was his brother's "agent." We find no error in rejecting the offered testimony of defendant Marks.

[7, 8] 3. At the time of the alleged making of the 50-point margin limitation, one Sims was in active charge of the brokerage office at Hickman conducted in the name of J. N. Tarbet & Co. In connection with the testimony of the two witnesses for plaintiff already referred to, as to the acknowledgment, by defendant Marks of the existence of the agreement, reference was made to Sims as the one who had made the agreement in the first instance.[3] In their brief in this court, defendants' counsel say: "We do not think there was evidence sufficient to assume the agency of Sims or of Tarbet Brokerage, and that such evidence was incompetent in the case." We find in the record nothing to indicate that an objection of incompetency was made, and in the absence of statement of ground of objection, the refusal should not be reviewed. Robinson v. Van Hooser (C. C. A. 6) 196 F. 620, 624, 625. Nor where, as here, there was substantial evidence, can we consider whether it was sufficient to establish the agency of Sims. We cannot determine the weight of the evidence or the credibility of the witnesses. That is for the jury. Rochford v. Pennsylvania Co. (C. C. A. 6) 174 F. 81, 83; Shadoan v. Railway Co. (C. C. A. 6) 220 F. 68, 71. It is enough to say that, in addition to the testimony of Marks' admission that he was bound by what Sims did, there was substantial evidence tending to show that Sims did represent and speak for defendants.[5] The court did not assume the sufficiency of the evidence of agency of Sims or of Tarbet & Co. The jury was instructed that "any agreement on the part of Tarbet & Co. that plaintiff would be carried so long as he had up a 50-point margin with the defendants would not be binding upon the defendants, unless you further believe from the evidence that Tarbet & Co., in making such agreement, if

---

[2] Hayden v. Easter, 24 S. W. 626 (Ky. Court of Appeals); Smick v. Beswick, 113 Ky. 439, 447, 68 S. W. 439.

[3] The witness McNeill testified that when Marks was advising Jesse McNeill (apparently in the latter part of May, 1924) to take out more bales of cotton, the latter declined, saying he had made arrangements with Sims (who the witness said was in charge of the Hickman office) that he would be carried on all the transactions so long as he had a 50 point margin on 100 bales;[4] that Marks said he knew that, that he was forced to carry out whatever agreement Sims made; that he knew they had made arrangements to carry him on all contracts provided he had a 50-point margin on each 100 bales; that at the conversation in question between Marks and Jesse McNeill "it was finally agreed to let him go and stay in the market until it had taken up all the margins he had"; that immediately after this happened Sims showed the witness a telegram to Sims (and it is claimed by plaintiff given by Sims to Jesse McNeill) signed in the telegraphic code name of an employee of the defendants in the head office in the department of margins, who seems to have had authority to send to clients all marginal requirements, reading, "Will carry No. 11 [which meant Jesse McNeill] over on all contracts." While the authenticity of this telegram is not conceded by defendants, it was open to the jury, under all the evidence in the case, to conclude that it was sent in due course of business. Indeed, defendant Clark says "I don't recall the message being sent, but it is quite possible that it was sent."

[5] Sims seems to have been in defendants' employ at their Memphis office just previous to his coming to the Hickman office. After the latter office closed, he was employed in defendants' Atlanta office for a time. There was testimony, among other things, that the name of John F. Clark & Co. was in large letters on the quotation board in the Hickman office at the time of the conversation between Marks and Jesse McNeill, that, when Marks was in Hickman, Sims introduced him to the witness as his boss, and that, after the market closed, Marks and Sims went over the books together in the Hickman office.

[4] Without special agreement the amount of margins required was subject to the judgment and discretion of defendants.

any, were acting as the agents of the defendants." The finding of such fact was implied in the verdict. In defendants' brief there is reference to testimony received under objection that the questions were leading. Not only is such point not assigned as error, but the questions themselves were not such as to constitute error.

Finding no error in the record, the judgment of the District Court is affirmed.