MARIE THELEN AND ANOTHER v. PETER A. SPILMAN.
DAKOTA TRANSFER & STORAGE COMPANY
AND ANOTHER, THIRD-PARTY DEFENDANTS.

86 N. W. (2d) 700.

November 22, 1957—Nos. 37,138, 37,139.

*Rosengren, Rufer & Blatti* and *Johnson & Sands,* for appellants.
*Bradford & Kennedy,* for respondents Thelen.
*Field, Arvesen & Donoho,* for respondent Spilman.

MATSON, JUSTICE.

In two automobile collision cases consolidated for trial, third-party defendants appeal from judgments against them in favor of the plaintiffs, and from judgments against plaintiffs absolving the other defendant from negligence, one of which judgments also awarded damages to such other defendant against the third-party defendants.

The car collision occurred July 27, 1954, on Highway No. 10 about five miles east of Staples, Minnesota. Plaintiff E. J. Thelen (herein sometimes called Thelen), accompanied by his wife, plaintiff Marie Thelen, was driving easterly several car lengths behind a semitrailer truck operated by third-party defendant Milt E. Reiten (herein called Reiten) and owned by third-party defendant Dakota Transfer & Storage Company (herein called Dakota). About 8:30 p. m., after plaintiff had followed the Dakota truck for about a mile or a mile and a half, Reiten, who was driving with the truck lights on dim, knowing that plaintiffs probably wished to pass, blinked his marker lights as a signal for Thelen to pass his truck. It was a clear night and the road was dry, straight, and level for over a mile to the east. Thelen, relying upon Reiten's signal, turned out into the left-hand or passing lane of the 24-foot-wide highway, which was the north lane; looked momentarily to see that everything was clear; and then quickly accelerated his car whereby it was propelled forward alongside the rear end of the Dakota trailer so that it was impossible for Thelen to turn back into the right or south lane.[1]

After Reiten blinked his marker lights, he glanced in his rearview mirror and saw Thelen turn into the passing lane, and, after making

---

[1]The evidence is in conflict as to how far Thelen travelled in the passing lane, how long he was there, whether he came alongside the Dakota truck at all or merely followed behind it in the passing lane, and whether he could have safely turned back into the right lane. We have, however, taken, as we must, the view of the evidence most favorable to the verdict.

this momentary rearview observation, Reiten turned his attention again to the road in front of him where, for the first time, he saw defendant Spilman's automobile approaching from the opposite direction in the north lane and at a distance of about 20 or 30 feet from his truck. In an effort to warn Thelen of Spilman's approach, Reiten immediately blinked his marker lights rapidly several times and decelerated the truck slightly, thus making it more difficult for Thelen to get back into the right-hand lane behind the Dakota unit. Almost immediately upon entering the passing lane, Thelen applied his brakes. His car skidded about 50 feet, slid sidewise for another 110 feet, collided with the left front side of Spilman's automobile, and came to rest in the ditch on the north side of the road, 39 feet from the point of impact. Mrs. Thelen did not see the oncoming Spilman car and Thelen, whose memory has been impaired by the accident, cannot remember whether he did or not.

Spilman first noticed Thelen's automobile in the north lane when he (Spilman) was approximately 140 to 150 feet east of the front of the Dakota truck. When Spilman saw the Thelen car he switched his lights from low beam to high beam, turned off the highway so that his vehicle was almost entirely on the north shoulder (which at that point was approximately 6 feet wide), and slowed down. This took but a matter of seconds. When Spilman's car had almost stopped, Thelen's vehicle collided with it. Neither of the two automobiles, both of which were demolished, collided with the Dakota truck which at all times remained in its right-hand lane. Thelen and his wife were seriously injured.

At the close of the evidence all defendants moved for directed verdicts in their favor. Reiten and Dakota also moved for a directed verdict that defendant Spilman have no contribution as against them. These motions were denied.

All issues of negligence, contributory negligence, and proximate cause as to each of the litigants were submitted to the jury on written interrogatories. Issues of damages suffered by Thelen, his wife, or by Spilman, were similarly submitted to the jury. The jury answered the interrogatories by finding that neither defendant Spilman nor plaintiff Thelen was negligent; that defendant Reiten was negligent and that

his negligence was the proximate cause of the accident; that Mrs. Thelen suffered damages in the amount of $16,000; that E. J. Thelen suffered damages in the amount of $42,000; that Spilman suffered damages in the amount of $211.

Thereafter defendants Reiten and Dakota moved for judgment notwithstanding the special verdict or in the alternative for a new trial. The trial court denied the motions and then made findings and ordered the entry of the judgments from which these appeals are taken.

Issues arise as to: (1) The probative value, if any, of reliance upon common custom as justifying conduct which by statute is prima facie evidence of negligence; (2) intervening cause; (3) whether driver's gratuitous giving of passing signal to vehicle following behind may constitute negligence for failure to exercise due care for the safety of others; (4) alleged errors in jury charge; (5) alleged inconsistency and perversity in jury's answers to special interogatories; and (6) alleged misconduct of counsel in arguing to the jury.

■ The sole connection of the third-party defendants, Reiten and Dakota, with the occurrence of the collision between the Thelen and Spilman automobiles was the act of Reiten in blinking (and time and manner in which he performed such act under the circumstances) his truck marker lights as a signal to Thelen to pass. Reiten and Dakota contend that Thelen had an absolute and nondelegable duty under M. S. A. 169.18, subd. 5, to exercise reasonable care by making his own independent observation to ascertain if it was safe for him to enter the left lane to pass a vehicle preceding him in his own lane, and that in the exercise of that statutory duty he could not rely upon the custom of accepting the blinking of the lights of a truck preceding him in his own lane as an indication that the left lane ahead was free of traffic approaching from the opposite direction and that it was therefore safe for him to pass. Section 169.18, subd. 5, provides in part:

"No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe

operation of any vehicle approaching from the opposite direction or any vehicle overtaken."

Is there any merit in the contention that Thelen had no right to rely on custom as a justification for his attempt to pass the Dakota vehicle in response to Reiten's blinking of the lights? In Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822 (cited by Reiten and Dakota), we did not hold that a motorist's act of relying on custom may never be considered in determining if his violation of a prima facie statute was justified and therefore not negligent in fact. We simply held in that decision that after the 1937 enactment of § 169.18, subd. 1 (which repealed a prior statute) custom no longer had *statutory* justification as an excuse for a motorist's failure to keep to his right of the road, and that despite custom, his failure to do so constituted prima facie (§ 169.96) evidence of negligence which would prevail against the violator in the absence of evidence showing a *statutory or other reasonable ground for such violation.*[2]

Clearly, the Simon v. Carroll decision did not exclude custom as an evidentiary element that might be considered by the factfinder in ascertaining if there was justification for the violation of a prima facie statute. It is significant that the plaintiff in that case (241 Minn. 217, 218, 62 N. W. [2d] 827) was not held contributorily negligent as a matter of law.

While usage and custom cannot change or abrogate norms of reasonable care prescribed by statute, it is to be borne in mind that:

"* * * where a statute makes a violation of prescribed standards

---

[2] In Simon v. Carroll, 241 Minn. 211, 215, 62 N. W. (2d) 822, 825, we said:

"Since the enactment of § 169.18 in 1937 custom as a factor in and of itself has had no *statutory* recognition as a justifiable cause for a motorist's failure to keep to his right half of a road when such half is of sufficient width and is otherwise reasonably usable. *The prior statute* (Mason St. 1927, § 2720-9) which was expressly repealed simultaneously with the adoption of the present highway act—of which § 169.18 is a part—*did give recognition to custom* when it provided that 'the driver of a vehicle shall drive the same upon the right half of the *traveled portion* of the highway.' " (Italics supplied.)

only evidence of negligence, it contemplates that other factors relevant to the question of negligence may be considered. Common custom under similar circumstances with respect to an act, alleged to constitute contributory negligence and declared by statute to be prima facie evidence of negligence, is relevant to determination of the question whether such act constitutes negligence as a matter of fact."[3]

It is a customary courtesy for drivers of big trucks which obscure the view ahead to signal following automobiles when the road ahead is clear of traffic and it is safe to pass. It is also customary for the driver of a following vehicle to take heed of such signal in determining whether it is safe to pass. It was, therefore, not error for the trial court to permit the jury to consider such custom in determining if the plaintiff was guilty of contributory negligence.[4]

It goes without saying that the signal from the preceding vehicle did not relieve Thelen from the statutory duty of making his own independent observation as to when it was safe for him to pass and that this duty could not be delegated to Reiten or any other person under the circumstances. We find nothing, however, in the instructions to the jury, when they are viewed as a whole, that either justified or permitted them to assume or find that Thelen was relieved of such duty. No error occurred.

■ Reiten and Dakota contend that Reiten's signal was not a proximate cause of the collision because Thelen, after he had entered and proceeded for some distance in the passing lane, arrived at and acted upon his own independent decision that the lane was free of approaching traffic and that it was then safe for him to pass the Dakota unit. On this theory of the facts, which the jury could reasonably reject upon the conflicting evidence, Reiten and Dakota allege that Thelen's conduct was negligent and constituted an efficient intervening

---

[3]Howard v. Marchildon, 228 Minn. 539, 545, 37 N. W. (2d) 833, 837. In that case the plaintiff failed to give the statutory signal for a left turn (prescribed by M. S. A. 169.19, subds. 4, 5, 7, and 8), but instead held the left door open as a substitute for the statutory signal.

[4]See, Shirley Cloak & Dress Co. v. Arnold, 92 Ga. App. 885, 90 S. E. (2d) 622; Petroleum Carrier Corp. v. Carter (5 Cir.) 233 F. (2d) 402; Annotation, 48 A. L. R. (2d) 252.

cause which superseded Reiten's negligence as a proximate cause.

It is elementary that a plaintiff's negligent act or omission cannot constitute an efficient intervening cause unless it occurs seasonably so as to have sufficient time to take effect. In Lee v. Lee, 248 Minn. 496, 500, 80 N. W. (2d) 529, 533, we said, as a corollary to the rule of Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, that:

"* * * an act or omission of a second tortfeasor (or actor), as a matter of law, cannot constitute an efficient intervening cause which breaks the chain of causation between the negligence of the original tortfeasor and the resulting accident or collision, when such act or omission occurs so near in time to the happening of the accident or collision that it cannot possibly, in the remaining time interval, have found expression either to stop or break the natural sequence and progression of the original tortfeasor's negligence as a proximate cause."[5]

■ Upon the conflicting evidence in this case, the jury could reasonably find that Thelen did not have time to make an independent observation and decision that it was safe to overtake and pass Reiten, and that he was placed in immediate danger as soon as he entered the left lane. Furthermore, the jury could find that, even if Thelen did make an independent observation and decision, the time left for him to act upon this decision was too short to avert the accident. Manifestly, whether Thelen's conduct after entering the passing lane was negligent and constituted an efficient, superseding, and intervening act of causation was a question of fact for the jury.

■ We do not agree with the assertion that, since Reiten was under no legal duty to give any signal at all, his act of giving a passing signal cannot, as a matter of law, constitute negligence. As simply stated by

---

[5]See, Barrett v. Nash Finch Co. 228 Minn. 156, 160, 36 N. W. (2d) 526, 529, wherein we said:

"* * * Where the driver of an automobile plainly sees another automobile upon the highway *in time to avoid a collision* and negligently fails to do so, the driver's negligence is an intervening, efficient, and the proximate cause of the collision, insulating the prior negligence of the driver of the automobile with which he collided and reducing it to a mere occasion or condition." (Italics supplied.)

Judge Cardozo in Glanzer v. Shepard, 233 N. Y. 236, 239, 135 N. E. 275, 276, 23 A. L. R. 1425, 1427:

"\* \* \* It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all \* \* \*."[6]

A driver who, though under no legal duty to do so, voluntarily undertakes to signal a following driver that it is safe to pass is liable in damages for all reasonably foreseeable consequences if in giving the signal he does not exercise reasonable care for the safety of others.[7]

The jury could reasonably find that Reiten was negligent in giving the signal when his view of the road ahead was limited by having his lights on low beam; in failing to see the Spilman car before he gave the signal; and also in decelerating his truck when he knew that Thelen was alongside in a position of danger and that by slowing down the truck it would be more difficult for him to return to his proper lane. In view of all the circumstances, the jury could find, as already noted in discussing the issue of intervening cause, that the signal placed Thelen in a position of imminent peril with neither opportunity nor time for extricating himself therefrom.

■ It is argued that the trial court misstated a fact, or took away from the jury an issue of fact, when it said in its charge that Reiten "signaled Thelen *to pass* his truck" and again said that Reiten "assumed the duty or responsibility of flashing a signal to Thelen *to pass*." (Italics supplied.) It is argued that the signal was not one *to pass* or *an all-clear signal* but merely an indication to Thelen that it was safe to enter the passing lane sufficiently to observe for himself whether it was safe to proceed. Here, in view of the testimony of the parties, and in view of the common understanding of the meaning of such a signal, it would indeed be difficult for any trier of fact

---

[6]Quoted in Haralson v. Jones Truck Lines, 223 Ark. 813, 270 S. W. (2d) 892, 48 A. L. R. (2d) 248.

[7]See, Shirley Cloak & Dress Co. v. Arnold, 92 Ga. App. 885, 90 S. E. (2d) 622; Rodi v. Florida Greyhound Lines (Fla.) 62 So. (2d) 355; Judt v. Reinhardt Transfer Co. 32 Ohio Op. 161; Haralson v. Jones Truck Lines, 223 Ark. 813, 270 S. W. (2d) 892, 48 A. L. R. (2d) 248, with Annotation at 252.

to conclude it was not a signal *to pass*. In any event, appellants are precluded from predicating error that the court withheld a fact issue from the jury since the appellants took no exception to the court's statement of fact or asked for a correction. Error as to misstatement of fact was first claimed in the motion for a new trial. The longstanding rule that a litigant may not passively consent to the withholding of a fact issue from the jury and then, when disappointed in the verdict, obtain a new trial on the ground that it was error not to submit it has not been changed by Rule 51, Rules of Civil Procedure.[8]

The trial court did not err in its instructions relating to the statutory requirements governing the exhibition of headlights by Spilman. The exact time at which the accident occurred was in dispute; whether it occurred more or less than one-half hour after sunset was a fact issue to be resolved by the jury. It is asserted that, because of the dispute, it was error to fail to instruct the jury "concerning the further and additional obligation imposed on the drivers of automobiles to exhibit lights at other times if conditions of darkness are such that reasonable care requires the exhibit of such lights." The court's charge included the reading of § 169.48, which requires lights "at any time from a half hour after sunset to a half hour before sunrise *and at any other time when there is not sufficient light* to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead, * * *." (Italics supplied.) The reading of the statute gave the jurors the correct rule and permitted them to have found that lights were required at the time of the collision even if it was earlier than one-half hour after sunset.[9]

We see no merit in the contention that the answers of the jury to the interrogatories were inconsistent and perverse. Appellant's contention rests primarily on selections and assumptions of fact which the jury

[8]Hess v. Koskovitch, 241 Minn. 174, 62 N. W. (2d) 806; see, State v. Solum, 183 Minn. 36, 235 N. W. 390.

[9]Cohen v. Silverman, 153 Minn. 391, 190 N. W. 795, is not in point because that decision was handed down when the statute only required lights during the period from one hour after sunset to one hour before sunrise. G. S. 1913, § 2632. Since then the statute has been amended and as it now reads it covers times other than the sunset-sunrise limits.

upon the conflicting evidence was not required to make. It is argued that, if it was too dark for Thelen to see an oncoming, unlighted car, so also was it too dark for defendant Reiten to see that same car. Thelen's memory was impaired by the accident and he has no recollection of what took place. The jury could reasonably find that he did see the oncoming Spilman vehicle but had insufficient time and opportunity to extricate himself from the danger. We have carefully examined all aspects of the argument to establish perversity in the jury's verdict, and we find them without merit.[10]

■ Prejudicial misconduct of counsel in his argument to the jury is alleged as a basis for a new trial. The matter of granting a new trial for misconduct of counsel rests almost wholly in the discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of discretion.[11] A new trial for prejudicial argument is granted only to prevent a miscarriage of justice and rests in the discretion of the trial judge.[12]

The judgments of the trial court are affirmed.

Affirmed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.

---

[10]It is to be noted that Rules of Civil Procedure, Rule 49.02, applies to general verdicts accompanied by answers to interrogatories and that Rule 49.01 deals with special verdicts.

[11]Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433; Hallada v. G. N. Ry. 244 Minn. 81, 69 N. W. (2d) 673; Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614.

[12]See, Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30.