Jesse H. MILLER and Hattie P. Miller,
his wife, Appellants,

v.

Alvin G. WATKINS, Respondent.

No. 48727.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

Roberts & Roberts, by Raymond R. Roberts, Farmington, for appellants.

Dearing, Richeson & Weier, by H. L. C. Weier, Hillsboro, for respondent-defendant Alvin G. Watkins.

HOUSER, Commissioner.

Jesse and Hattie Miller, parents of seven-year-old Roger Dale Miller, sued Alvin Watkins, owner and driver of a school bus, and William J. Reed, owner and driver of a truck, for $25,000 damages for the death of Roger, who was killed by Reed's truck while crossing the highway in front of his home to board Watkins' bus. A trial jury returned a verdict for both defendants. Plaintiffs appealed as to both defendants but later dismissed their appeal as to defendant Reed, and perfected their appeal only as to defendant Watkins.

The negligence charged and submitted as to defendant Watkins was that Watkins, driving his school bus west on the highway, approached a spot where he customarily picked up school children, stopped or almost stopped the bus on the north side of the highway, and having actual or constructive knowledge that Roger lived on the south side of the highway and had to cross the highway to board the bus and that Roger frequently crossed without watching for traffic, and having observed Reed's truck approaching from the west and that the truck was commencing to stop, negligently signaled truck driver Reed not to stop but to proceed on to the east and pass the bus, intending that Reed rely on the signal; that Reed relied on the signal, drove the truck east past the bus, and struck and killed Roger.

Plaintiffs' sole point on appeal is that the court erred in giving defendants' Instruction D–11, the criticized portion of which we have italicized:

"The Court instructs the jury that in considering the evidence in this case as to whether any defendant was guilty of negligence as defined and submitted in these instructions, you are not at liberty to resort to guesswork, speculation or conjecture, but you must be governed by all the facts and circumstances in evidence and the instructions of the Court, *and if,* under the evidence and the instructions of the Court, *you are unable to determine with any reasonable degree of certainty whether a certain defendant was guilty of negligence,* as defined and submitted in these instructions, *then the plaintiffs would not be entitled to recover against said defendants and your verdict must be in favor of that defendant*; and in this connection, the Court instructs you that under no circumstances are you to be swayed or influenced by bias, prejudice or sympathy, for or against any party to this action."

Appellants claim this instruction cast upon plaintiffs an excessive burden of proof. This is a civil action. Plaintiffs were required to prove defendant's negligence by the preponderance, that is, the greater weight of the credible evidence, Thompson v. Jenkins, Mo.Sup., 330 S.W. 2d 802, 804; not beyond a reasonable doubt. Instruction D–11 required plaintiffs to prove defendant's negligence to a "reasonable degree of certainty." A certainty is that which is certain or sure. It has the quality of indubitable reality. It is a fact or truth unquestionably established. Its antonym is dubiousness. Webster's New In-

ternational Dictionary, Second Ed. To require proof to a reasonable degree of certainty is to require proof beyond a reasonable doubt, which is a higher burden of proof than that required in civil actions. Thompson v. Jenkins, supra; Payne v. Reed, 332 Mo. 343, 59 S.W.2d 43, 47[10]. The giving of Instruction D–11 constituted reversible error. Stephens v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 215 S.W.2d 50.

Respondent Watkins claims the judgment in his favor was for the right party and should stand regardless of any procedural error, because plaintiffs failed as a matter of law to make a submissible case of negligence. The jury could have found the following facts: Watkins, driving the school bus west, came over the crest of the hill 600 feet east of the spot where Roger was struck. The highway before him was level and his view was clear. The north side (i. e., the front) of Roger's house was 29 feet south of the south edge of the blacktop pavement. The front yard of Roger's home, which was nearly level with the highway, and the east side of Roger's house, were in plain view of Watkins as he approached. Watkins knew the location of Roger's house on the south side of the highway and that Roger customarily crossed the highway to board the bus. The place where Watkins customarily stopped to pick up Roger and the two Smith children was a point on the north side of the highway approximately even with the west side of the lot on which Roger's house was built. The bus was 32 feet long. The rear of the bus in its stopped position at the pickup point would be approximately even with the walk running from the front door of Roger's house to the highway. There was a car parked in the driveway between Roger's house and the next house west. The parked car, which was 8 to 12 feet from the pavement, would partially block the view of a child proceeding north from Roger's house to the highway, looking west for approaching traffic. There were four mailboxes three or four feet south of the south edge of the pavement, on the west side of Roger's lot. The mailboxes were 4 feet high. The mailboxes also would partially obstruct the view of such a child. Watkins saw the parked car, and could see the mailboxes, and knew they "would have blocked the view" toward the west. Apparently Watkins was on time as he arrived to make the pickup. Watkins knew Roger and knew that he was seven or eight years old. Roger was "in the habit of coming to the rear of the bus around that way." Watkins was acquainted with Roger's habits. Watkins knew that Roger frequently had crossed from the south to the north side of the pavement behind the bus in order to board the bus. Watkins knew that Roger and the Smith children, who lived next door to Roger, had to cross the highway to get to the place where they boarded the bus. Watkins knew that on previous occasions Roger had run out into the highway without looking. It is against regulations for a child to run for the school bus at any time. The regulations required the child to go to the proper cross point in front of the bus, wait until the bus came to a stop, until the stop arm was down, and until Watkins motioned the children to cross the highway, and then walk across with the other two children who boarded at that point. Watkins had corrected Roger and told him that it was dangerous to run across the highway behind the bus, and that he was not supposed to run at all. He had explained the regulations to Roger; had "lectured him" and told him not to do it; had "spoken to him about it a few times," but Roger "couldn't seem to understand." With this knowledge Watkins approached the scene, slowing down to 10 m. p. h. and to a stop at the appointed pickup point, with his school bus lights flashing, but without his cross arm STOP sign down. As Watkins approached the stop he was conscious of the approach of Reed's two-ton truck, which was carrying a load of large logs. Watkins saw Roger's house

but did not see Roger at any time. When Watkins observed the truck he "took his eye off" Roger's house. Reed's truck was approaching from the west at 25 to 30 m. p. h. Truck driver Reed saw the school bus when the bus was 60–70 feet east of Roger's house, sensed that it was going slowly, and assumed it would be stopping to load. He saw the flashing lights on the school bus and estimated its speed at 10 m. p. h. As soon as Reed saw it was a school bus he began to apply his brakes to stop, and slowed the truck to 10–15 m. p. h. When the two vehicles were 175 feet apart, Watkins made a gesture with his hand, motioning Reed "to come on through." Reed did not respond to the gesture, and continued to slow down the speed of the truck, to about 10 m. p. h. Watkins motioned twice more, when the vehicles were 150 feet apart. The school bus was then "pretty nearly in front of" Roger's house. When Watkins motioned the second time, Reed proceeded to go on through, accelerating to 20–25 m. p. h. The truck was "just about to the bus" when the bus came to a complete stop. When the front of the truck had passed the rear of the school bus Roger was seen by Reed two or three feet south of the pavement, just at the edge of the blacktop, running "as fast as he could run" straight toward the highway. He caught just a glimpse of the child, swung to his left to avoid him, but it was too late and the child was struck down and killed by Reed's truck. He hit the truck behind the cab, eight feet from the front of the truck. Reed's view of the child approach had been obstructed by the parked car and the row of mailboxes. Caroline Smith, a 15-year-old schoolgirl, lived in the house immediately west of Roger's house. She regularly took this school bus. As she came out on her sidewalk that morning she saw the school bus coming west, slowly, when it was about a car's length east of its regular stopping place. She then saw the truck coming from the west "around the Keaton's mailbox." The bus driver, who was stop-ping, raised his hand in some type of motion, and the bus stopped. When the bus came to a complete stop the truck was "just about to the bus." She saw Roger, running just about halfway between his house and the highway, when the truck was "about even with the bus."

Respondent argues that Watkins could not anticipate that the signal would cause the child to be injured; that reasonable minds could not say this would be the natural and probable consequence of his act; that "Watkins could not anticipate that the Miller child would run into the side of the truck"; and that Watkins' act was not the proximate cause of the death.

■ The jury could reasonably find that Watkins was negligent in giving the signal; that considering the time, distances, surrounding physical facts and known habits and propensities of the child, Watkins reasonably should have anticipated that Roger would emerge momentarily from the house, which was so near that it would take Roger only a few seconds to reach the pavement; that Roger might be expected to run across the highway toward the rear of the bus; that Roger would not see the truck because of his known inattentiveness to traffic hazards and because his view to the west was partially obstructed; that the truck driver would rely upon and obey Watkins' signal, come on through without stopping, and pass the point where Roger could be expected to cross the highway; that the truck driver's view of the child was obstructed, and that the child's movement and that of the truck might coincide; in short, that giving the signal and "waving the truckdriver through" involved a foreseeable risk of injury to Roger, which Watkins would not have taken in the exercise of the highest degree of care, and that the act of Watkins was a concurring proximate cause of Roger's death. A driver of a motor vehicle who voluntarily undertakes to signal the driver of another motor vehicle to pass is liable for all damages

for all reasonably foreseeable consequences if in the giving of the signal he does not exercise the highest degree of care for the safety of others. Thelen v. Spilman, 251 Minn. 89, 86 N.W.2d 700, 77 A.L.R.2d 1315, quoting Cardozo, J. in Glanzer v. Shepard, 233 N.Y. 236, 239, 135 N.E. 275, 276, 23 A.L.R. 1425: " * * * It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. * * *"

The judgment is reversed and the cause remanded for a new trial.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.