**ROCHESTER CIVIC THEATRE, INC.,**
**Appellant,**

v.

**Maria RAMSAY, Appellee.**

No. 18352.

United States Court of Appeals
Eighth Circuit.

Nov. 17, 1966.

Michael Berens, of O'Brien, Ehrick & Wolf, Rochester, Minn., for appellant. F. J. O'Brien, Rochester, Minn., with him on the brief.

Stuart W. Rider, Jr., of Rider, Bennett, Egan & Johnson, Minneapolis, Minn., for appellee. Bettle, Neal, Harris, Minor & Williams, Charlottesville, Va., with him on the brief.

Before VAN OOSTERHOUT and GIBSON, Circuit Judges and NICHOL, District Judge.

GIBSON, Circuit Judge.

Appellant-plaintiff Rochester Civic Theatre, Inc. appeals from an adverse jury verdict finding the appellee-defendant Maria Ramsay not liable on a $40,000 charitable subscription pledge and from the trial court's refusal to sustain a motion for judgment notwithstanding the verdict or in the alternative granting a new trial. This is a diversity case governed by Minnesota law.

Plaintiff is a Minnesota non-profit corporation and is organized and devoted to legitimate theater presentations in Rochester, Minnesota. The theater is a community effort with about three thou-

sand members, one thousand of whom have volunteered their time and efforts in the staging and promotion of various dramatic productions for community enjoyment. By November 1961 it had become apparent that the old warehouse being used as a theater building was inadequate for its purpose, so the group began planning for more adequate quarters. They had plans drafted for a proposed theater building and made arrangements with the city of Rochester for use of certain municipal property.

The architect's plans indicated that the building would cost $180,000 and the interior furnishings would add an additional $70,000 to the cost. Consequently, in May 1962 plaintiff initiated a $250,000 Building Fund Drive. It was during the course of the latter part of this campaign that representatives of the plaintiff began contacting the defendant, Mrs. Maria Ramsay, who is a woman of considerable wealth with a known interest in children. Though a citizen of the state of Nevada she was temporarily residing in a hotel in Rochester.

The evidence relating to the conversation between the agents of plaintiff and defendant is largely in dispute. Our narrative, therefore, will reflect, as it must, the evidence most favorable to the jury's verdict for defendant. In February 1963, Mrs. Ramsay attended a production of the Rochester Civic Theatre on the invitation of Mrs. Donoghue, the president of plaintiff. On February 25, 1963 Mrs. Ramsay was a guest at a dinner given by Mrs. Donoghue and attended by numerous persons connected with the theater. Discussed at this dinner was Mrs. Ramsay's interest in children, the general need for money, and the possibility of a "Maria Ramsay Children's Theatre".

By the end of March 1963, the campaign had gathered $185,000 in pledges, about $70,000 short of their stated goal. The situation was somewhat gloomy in that nearly every prospect in Rochester had been contacted by this time. On April 17, 1963, however, the campaign received a real "body blow". The bids

for construction were opened and the lowest bid was $58,000 over the architect's estimate. Though the architect succeeded in cutting some $22,000 from the plans, still a total of $286,000 would be needed rather than the projected $250,000. It was apparent that the plaintiff needed about $100,000 over its present pledges to complete the project.

At this juncture Mrs. Ramsay was again asked to attend a dinner, but she insisted that it was her turn to entertain and she invited all of the persons present at the prior dinner to dine with her on April 25, 1963 at the Pinnacle Room of the Kahler Hotel. At this dinner it was represented to her that approximately $200,000 had been pledged and that all that was needed was $40,000; that the theater had a children's section in the plans, but due to the lack of money it might have to be cut out; and that should Mrs. Ramsay pledge the needed $40,000 the children's theater could be built and it would carry the name chosen by her. Following these representations Mrs. Ramsay orally agreed to donate a a total of $40,000 over a five-year period.

A few days later, on April 29, 1963, Dr. Carr, Treasurer for plaintiff, contacted Mrs. Ramsey and asked her to sign a pledge card reflecting the oral agreement. Upon assurance that the card was not a binding obligation Mrs. Ramsay signed the card agreeing to donate a total of $40,000 in five annual installments of $8,000 each.

On May 16, 1963 the Rochester Civic Theatre formally entered into contracts for the construction of the theater building. Although some work had begun earlier without a contract, work was now formally commenced.

By June 1963, it had become apparent to Mrs. Ramsay that due to her husband's strenuous objection it would be unlikely for her to be able to fulfill her commitment. Mrs. Donoghue was aware of the difficulty Mrs. Ramsay was having in securing her husband's approval of the donation. On July 3, 1963, Mrs. Ramsay actually informed Dr. Carr that she was without funds to honor the pledge. The next day Mrs. Ramsay again informed Dr. Carr by telephone that she could not honor her pledge and asked for a return of the card.

The following day, July 5, 1963, Mrs. Donoghue, Dr. Carr, and others on behalf of plaintiff met with a group of Rochester bankers and entered into an agreement to finance the additional sum necessary, using the pledges as security. No mention was made of Mrs. Ramsay's attempted withdrawal. The evidence is conflicting on whether the bankers relied on defendant's pledge card, which she had signed "Mrs. Joseph Gales Ramsay III."

The issue of reliance upon the pledge and withdrawal of the pledge prior to reliance was submitted to the jury along with Mrs. Ramsay's affirmative defense of fraud. The jury, in a general verdict, found for Mrs. Ramsay.

■ Plaintiff points to the law of Minnesota that clearly provides that a charitable pledge or subscription is enforceable although no consideration passed at the time of the promise, if in reliance on the promise the promisee incurs liabilities or expends money in furtherance of the purposes of the subscription. Albert Lea College v. Brown's Estate, 88 Minn. 524, 93 N.W. 672, 60 L.R.A. 870 (1903); In re Stack's Estate, 164 Minn. 57, 204 N.W. 546 (1925). It is plaintiff's contention that the detrimental reliance on defendant's pledge was established by it as a matter of law and therefore should not have been submitted to the consideration of the jury.

It is undisputed that a written pledge was given by Mrs. Ramsay. It is undisputed that subsequent to this pledge plaintiff entered into a construction contract and began building. However, the existing Minnesota law indicates that the action on the part of the promisee must be induced or caused by the promise. It is difficult for us to say that this inducement has been proved by plaintiff as a matter of law. Also Dr. Carr testified the theater group had committed to build before the Pinnacle dinner of April 25, 1963. As observed by the trial court,

"The fact that a construction contract was signed does not mean in and of itself that it was done in reliance on the pledge." Especially is this true when it is plaintiff who carries the burden of proof on this issue. We do not think the law of Minnesota in this area can be clearly determined by the two old and isolated cases, though there is other authority cited by plaintiff indicating that consideration for the promise has been conclusively established by its actions subsequent to receiving the pledge.[1] However, regardless of the abstract error that may or may not have been committed by the trial court in submitting this issue to the jury, a serious question arises as to whether this point was properly saved for review.

Prior to the submission of this case plaintiff merely moved for a directed verdict on the entire case. There was no request for pre-emptive or verdict directing instructions on the individual issues or objections to the submission of these issues. The question is then, did this single motion for a directed verdict on the entire case save for review the question of whether there was sufficient evidence to support the submission of the individual issue of consideration independent of any issue or issues which might support a general verdict for the defendant? We believe it did not.

■ As the name implies the request for a directed verdict is a request for a complete and general verdict in the moving party's favor. See, O. J. Moore Grocer Co. v. Pacific Rice Mills, 296 F. 828 (8 Cir. 1924). Consequently, a moving party is only entitled to the granting of such a motion when there is no substantial evidence which would support a contrary verdict. If there is substantial evidence on which a jury could find a verdict against the moving party on any one of multiple independent issues or counts the motion must be denied. Clark v. McNeill, 25 F.2d 247 (6 Cir. 1928); Vareltzis v. Luckenbach Steamship Company, 258 F.2d 78 (2 Cir. 1958).

■ Concededly, in a case where there is but a single issue a motion for directed verdict properly preserves for review the sufficiency of the evidence to submit this issue to the jury. Likewise, when an action is based upon numerous interdependent elements, all of which must be proven in order to prevail, failure to carry the burden of proof on any one of these necessary elements will make one vulnerable to a directed verdict. However, where the litigation is made up of independent issues or counts a general motion for a directed verdict will not alone preserve for review the sufficiency of the evidence to support each independent factual issue. Miller v. New York Central Railroad Company, 239 F.2d 10 (7 Cir. 1956).

■ A general motion can only go to the case in its entirety and not to the individual submissions. To preserve the individual issues in such a case the appellant must move for a pre-emptory or verdict directing instruction on each of the individual issues which he is challenging, move the challenged issue be removed from consideration of the jury, or object to the instructions on those individual issues setting forth as a reason the lack of supporting evidence or conclusiveness of the proof. Lee v. Pennsylvania R. Co., 192 F.2d 226 (2 Cir. 1951); Vareltzis v. Luckenbach Steamship Company, supra. As clearly stated in Rule 51, Fed.R.Civ.P. "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires * * *." O'Mal-

---

1. Plaintiff contends that the Minnesota law generally does not emphasize the amount or quantum of consideration but is concerned only with the fact of consideration; and thus argues that any liability, representation or undertaking incurred or commenced would validate the subscription promise. See Hartung v. Billmeier, 243 Minn. 148, 66 N.W.2d 784 (1954)—a unilateral contract case holding "any lawful act or forbearance of value performed by the promisee" is sufficient consideration; and Estrada v. Hanson, 215 Minn. 353, 10 N.W.2d 223 (1943)—a suit to set aside a deed holding "some detriment" to promisee is sufficient.

ley v. Cover, 221 F.2d 156 (8 Cir. 1955); Palmer v. Miller, 145 F.2d 926 (8 Cir. 1945). Failure of an appellant to take one of the three avenues of attack on the separate issues results in the trial court not being properly apprised of the situation and not being given an adequate opportunity to properly rule on the weaknesses of the individual issues. Barney v. Staten Island Rapid Transit Railway Company, 316 F.2d 38 (3 Cir. 1963), cert. denied 375 U.S. 826, 84 S.Ct. 67, 11 L.Ed.2d 58; Hargrave v. Wellman, 276 F.2d 948 (9 Cir. 1960). Consequently, plaintiff has failed to preserve for review the individual factual submissions of this case.

■ It is our conclusion that the only point properly preserved on the question of the sufficiency of the evidence is that which was preserved by a motion for a general directed verdict. Since this motion goes only to the entire case, if the evidence reasonably and fairly tends to support either lack of reliance or fraud by the plaintiff the case was properly submitted to the jury and plaintiff's motion for a directed verdict was correctly overruled. No other question in this area is preserved for review by this single motion.[2]

■■ There has been a question as to whether we should follow the state or federal standard in determining the question of evidence necessary to support the verdict. Such an abstract decision is not particularly important in this case in that it appears that the federal and the Minnesota standards are substantially the same. Hanson v. Ford Motor Company, 278 F.2d 586 (8 Cir. 1960). For what it is worth, however, we will view the evidence and use the language as would an appellate court sitting in the state of Minnesota. Clay County Cotton Co. v. Home Life Ins. Co. of New York, 113 F.2d 856, 861 (8 Cir. (1940); Stofer v. Montgomery Ward & Company, 249 F.2d 285, 289 (8 Cir. 1957). Therefore, applying the substan-

tive law of Minnesota to the evidence as a whole, "if the evidence reasonably or fairly tends to sustain it" (the verdict), the trial court must be affirmed. Delyea v. Goossen, 226 Minn. 91, 32 N.W.2d 179 (1948). Or, as more strongly stated in Haugen v. Dick Thayer Motor Co., 253 Minn. 199, 214, 91 N.W.2d 585, 594 (1958), a jury verdict "will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole." For a more extended discussion on this issue of Minnesota law, see Hanson v. Ford Motor Company, supra.

■■ The motion for directed verdict was properly denied because at the very least, defendant made a submissible issue on her affirmative defense of fraud. The elements of fraud have been defined at various times by the Minnesota courts. See, Spiess v. Brandt, 230 Minn. 246, 41 N.W.2d 561, 27 A.L.R.2d 1 (1950); Swanson v. Domning, 251 Minn. 110, 86 N.W.2d 716 (1957); L'Evesque v. Rognrud, 254 Minn. 55, 93 N.W.2d 672 (1958); Hafner v. Ritzinger, 256 Minn. 196, 97 N.W.2d 839 (1959). Carefully marshalled by Judge Blackmun in Hanson v. Ford Motor Company, supra, these elements, as applied to this case, can be listed as follows: (1) there must be a representation, which is false; (2) the representation must pertain to a material existing fact, susceptible of human knowledge; (3) the person making the representation must know it to be false or must assert it as of his own knowledge without knowledge of its truth or falsity; (4) the representer must intend the other person to act on it, or under the circumstances the other person must be justified in so acting; (5) the other person must in fact be reasonably induced to act upon the representation, must rely upon it, and suffer damage attributable to the misrepresentation.

In the case at bar, taking the evidence most favorable to the verdict, it was represented that approximately $200,000

2. Plaintiff has requested re-examination of the standard of review to be applied by federal appellate courts in diversity cases on questions of doubtful state law. This disposition of the case makes unnecessary such a re-examination at this time.

had already been pledged in the fund raising drive. In fact only $185,700 had been positively pledged at that time. Though admitting the statement, plaintiff claims the difference in figures cannot be considered "material". The variance, although not wide, is sufficient we believe to support a jury's finding that this was, under the circumstances, a material misstatement of fact.

Defendant was told that $40,000 was all that was needed, when in fact over $100,000 was needed to complete the theater. Plaintiff argues that the evidence indicates that it only represented that $40,000 was the figure needed to "proceed". We disagree. From the evidence before us Mrs. Ramsay could well have reasonably understood plaintiff to be indicating that $40,000 was all that was needed to complete the building program, with $40,000 the goal would be met, and that she could be the savior of the project by giving this final amount. A jury would be justified in considering this as an element of fraud.

Defendant was told that a children's theater or "section" was in the plans, but due to a shortage of money this section would have to be removed. Mrs. Ramsay was told that if she donated the needed $40,000 the children's theater could be achieved and it would carry her name. In truth no children's theater was ever planned or its removal contemplated. Plaintiff again argues that no representations of a "children's theater" were ever made. Plaintiff argues that its representatives only spoke of "children's programs" which were, in fact, contemplated. Mrs. Ramsay disputes this testimony and contends that a "children's theatre" and "children's section" were mentioned on various occasions. As there is a conflict in testimony, the jury would be justified in deciding the conflict in favor of Mrs. Ramsay.

■ Plaintiff argues further that these "plans" represent future and not present facts as the law requires. Again we disagree. The present plans of the plaintiff, as well as the present financial inability to complete these plans, are existing facts even though their activation may be in the future. A false representation of these plans may well serve as a basis for a charge of fraud. McElrath v. Electric Inv. Co., 114 Minn. 358, 111 N.W. 380 (1911). The damage is patent and a submissible issue was made on reliance.

In conclusion, we think the jury would have been fully justified in finding that plaintiff made one or more representations that were false, that pertained to material existing facts, that were made while knowing them to be false, that were intended to induce Mrs. Ramsay to rely on them, and that she did in fact so rely. Thus a case of fraud serving as an affirmative defense has been made out and sufficiently supported by the evidence. The plaintiff's motion for a directed verdict and motion for judgment notwithstanding the verdict were properly denied.

■ Appellant also argues that defendant's final argument to the jury was improper. Its alleged impropriety is founded upon defendant exhorting the jury to carefully view the legal defenses to protect individuals from the misrepresentations of overzealous fund raisers. We have examined the argument and have concluded that there was nothing *per se* improper about the argument as was found in London Guarantee & Accident Co. v. Woelfle, 83 F.2d 325 (8 Cir. 1936). There were no incorrect statements of the law nor undue and unjustified appeals to the passions and emotions of the jurors. The trial court overruled the objection to the argument and denied plaintiff's motion for a new trial. The scope and extent of oral argument are within the sound discretion of the trial court. It is the trial court that has the superior vantage point to oversee the factual presentation of the case, and hold argumentative contentions within proper bounds. We are not inclined to grant a new trial unless it is clear to us that the trial court abused its discretion in allowing the attorneys undue latitude in making their arguments to the jury. Twacht-

man v. Connelly, 106 F.2d 501, 509 (6 Cir. 1939); Hockaday v. Red Line, Inc., 85 U.S.App.D.C. 1, 174 F.2d 154, 156 (D.C. Cir. 1949); Thelen v. Spilman, 251 Minn. 89, 86 N.W.2d 700, 77 A.L.R.2d 1315 (1957). Taken either alone or in conjunction with the cautionary instructions we are convinced that the arguments were within permissible bounds and no discretion has been abused by the trial court in failing to limit the argument or in refusing a new trial.

■ Plaintiff objected to the charge that instructed the jury to give "no consideration to the claim of plaintiff based upon the oral promise." The trial court's removal of this issue from the jury was based upon the Minnesota Statute of Frauds, M.S.A. § 513.01 which reads in part:

> "No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith:
>
> "(1) Every agreement that by its terms is not to be performed within one year from the making thereof;".

The pledge of $40,000 to be paid in annual installments of $8,000 over a period of five years could not possibly "be performed within one year", as required by the statute. Therefore, the trial court correctly applied the law of Minnesota and removed this question from the jury as required by that law. The trial court proceeded with the written pledge, without which the oral promise would have no legal standing whatsoever. And, since the terms of the two promises were the same, the plaintiff has not been prejudiced. As the trial court correctly pointed out, the oral and the written promises are so tied together in time and substance, the same issues were actually presented to the jury.

In viewing this case we are convinced that it was fairly tried, that the jury's resolvement of the factual issues in favor of defendant is sufficiently supported by the evidence under the Minnesota standard of review of a jury verdict, and that the trial court did not abuse its discretionary powers.

Judgment is affirmed.